IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: Charles Zandford

| | | |
|---|---|---|
| Charles Zandford, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-30 |
| | ) | |
| v. | ) | |
| | ) | |
| Securities and Exchange Commission | ) | |
| | ) | Bankruptcy Case No. 05-13305 |
| Appellee | ) | AP 06-81 |

**APPELLANT'S MOTION FOR LEAVE OF COURT TO AMEND ISSUES ON APPEAL**

Charles Zandford
420 Union Street
Milton, DE. 19968
(302) 351-4693

Charles Zandford ('the Appellant') respectfully submits this Motion to take leave of Court to amend his list of issues on appeal. This Motion arises out of the fact that while researching the issues to be raised in his appeal, the Appellant discovered that his adversarial proceeding before the Bankruptcy Court against the Securities and Exchange Commission ('SEC') constituted a 'none-core proceeding', an issue that was not included in the Appellant's initial filing of issues on appeal. The fact that the adversarial proceeding against SEC was a 'none-core' proceeding is plainly supported by the Third Circuit's settled precedent and is irrefutable

During the course of the bankruptcy case, the Appellant was unaware of the difference between "core" and "none-core" proceedings. The Appellant's experience with Title 11 provisions only consisted of filing his Chapter 7 Petition. His adversarial proceeding against SEC consisted solely of issues arising under other Federal law and unrelated to Title 11. Neither the bankruptcy judge, nor the court appointed attorneys informed the Appellant that his adversarial proceeding against SEC was 'none-core', and the requirement that all parties must give express consent to the Bankruptcy Court before it can enter a final order or judgment. In absence of express consent the Bankruptcy Court may hear the proceeding but may not enter a final order or judgment. Instead, the Bankruptcy Court submits proposed findings of facts and conclusions of law to the District Court Section 157(c)(1) ). The bankruptcy judge's judgment in this matter can not be final. Under these circumstances, the Appellant respectfully requests that the Court allow him to add the 'none-core' proceeding issue to his list of issues on appeal.

For the purpose of this Motion only, Appellant will assume that his adversarial proceeding against the SEC was a none-core , but otherwise related case under Title 11. However, whether the adversarial proceeding was "related" to the Appellant's Chapter 7 bankruptcy is the question that remains unanswered and constitutes a complicated question of first impression because there is simply no settled law or legal precedent to confer standing to SEC to file a Proof of claim to collect a debt that is statutorily subject to mandatory collection by a third party outside of a bankruptcy court- namely the United States Department of Treasury's ('Treasury') Financial Management Services ('FMS') pursuant to the statutory requirements of the Debt Collection Improvement Act of 1996 ('DCIA')( Chapter 10 of the Omnibus Consolidated Rescissions and Appropriation Act

of 1996 [Public Law 104-134, 110 stat. 1321-358, Section 31001(d)(2), codified at 31 U.S.C. §§3701, 3702, and 3711-3720E). Notably, the Treasury and/or FMS were not parties named in SEC's Proof of Claim.

Whether the Appellant's adversarial proceeding against the SEC was a 'related' or an "unrelated' none-core proceeding will constitute an issue in his forthcoming appeal. To resolve this question, the Court is called upon to undertake for the first time, significant interpretation of a Federal statute, The DCIA, and its implementing regulations the Federal Claims Collection Standards (FCCS )(31 CFR Chapter IX and Parts 900, 901, 902, 903, and 904) and 31 CFR part 285. These considerations all involve none Title 11 statutes and provisions which involve substantial and material considerations of Federal law regulating interstate commerce.

### 1. BACKGROUND

SEC's claim arises from a disgorgement order issued by Judge Andre M. Davis of the U.S. District Court for the District of Maryland (Civil Action No. AMD 95-CV-2826) on March 2, 1999, and re-instated after a lengthy appellate process on February 24, 2004, ordering disgorgement in the amount of $343,000 to be paid within 30 days. No payment was made due to the Appellant's compelling financial circumstances, and the debt became delinquent 30 days thereafter – on March 27, 2004, and remains delinquent to this date. This debt constitutes a pre- petition obligation, which at one point in time was subject to collection by a Federal District Court, and was and remains independent of the provisions of Title 11..

On October 11, 2005, the Appellant filed a pro se Chapter 7 bankruptcy Petition with the United States Bankruptcy Court for the District of Delaware (Case No. 05-13305-PJW). Under Schedule B (Personal Property) the Appellant indicated that his wife had passed away (intestate) and that there was an estate but he did not know how much, if any, he would inherit.

The Appellant respectfully draws the Court's attention To Exhibit 1, a letter from George F. Obrecht, III Esq., the Estate administrator, which supports the circumstances under which the Appellant had made his initial declaration under Schedule B. This letter also serves to refute several issues raised by SEC in its Motion to dismiss the Appellant's

appeal in this matter, and further lends support to the fact that the adversarial proceeding in this bankruptcy case constitutes a none-core proceeding. Exhibit 1, also states that SEC was initially preparing a Writ of Garnishment to gain access to the Appellant's inheritance. The Appellant does not know whether a Writ of Garnishment would have been issued by a State Court or a Federal District Court, but in any event, SEC's Writ of Garnishment would have been challenged in the appropriate court in the same manner as its Proof of Claim was challenged before the bankruptcy court by the Appellant based upon the statutory requirements of the DCIA. <u>Therefore, the Bankruptcy Court did not have original jurisdiction over this matter,</u> and this matter did not assert a Title 11 right..

Sometime in November 2005, The Appellant received a letter from the estate administrator advising him of a first distribution share of $75,000. Given this information, the Appellant hired a bankruptcy attorney for the sole purpose of amending his Chapter 7 Petition to include his inheritance. After receiving this letter of distribution, the Appellant received a telephone call from the estate administrator informing him of SEC's intent to file a writ of garnishment against his inheritance. During this conversation, the Appellant authorized the estate administrator to inform SEC of the Appellant's bankruptcy. Soon there after, SEC filed a Proof of Claim as an unsecured creditor in the amount of $343,000.

The Appellant filed a Petition with the Bankruptcy Court <u>to disallow SEC's Proof of Claim for lack of standing.</u> The Appellant did not challenge this debt, its collectability, or its dischargability. The point of law raised by the Appellant's Petition before the Bankruptcy Court was that the delinquent debt owed to SEC was subject to collection pursuant to the provisions of the Debt Collection Improvement Act of 1996 (DCIA). The DCIA requires all federal agencies to transfer past due, legally enforceable, none-tax debts that are more than 180 days delinquent to Treasury for collection by administrative offset and for Cross-Servicing on the agencies' behalf. 31 U.S.C. §3711 (g) establishes the statutory authority for the DCIA which states the following:

> **31 U.S.C. §3711. collection and compromise**.
>
> (g)(1) If a none-tax debt or claim owed to the United States has been delinquent for a period of 180 days -
> (A) the head of the executive, judicial, or legislative agency that administers the program that gave rise to the debt or claim

3

      **shall transfer** the debt or claim to the Secretary of the
Treasury; and
(B)  upon such transfer the Secretary of the Treasury shall take
appropriate action to collect or terminate collection actions on
the claim. (emphasis added)

The two key components of the DCIA include (1) mandatory referral of delinquent debt to FMS or an approved debt collection center for "cross-servicing" or collection, and (2) mandatory notification of delinquent debt to the Secretary of Treasury for purposes of administrative offset. <u>Implementing regulations for cross-servicing and offset are contained in 31 C.F.R. 285.</u>  31 C.F.R. 285.12(c)(1) requires the referral of "any debt that is more than 180 days delinquent to FMS for debt collection services", often referred to as Cross-Servicing. Further, "For accounting and reporting purposes, the debt remains on the books and records of the agency which transferred the debt." Id.

31 CFR 285.12 (d) <u>Exceptions to mandatory transfer</u> , states the following:
(1) A creditor agency is not required to transfer a debt to FMS pursuant to paragraph ( c)(1) **only during such period of time that the debt:**
(B)  The debt is the subject of proceedings pending in a court of competent jurisdiction, **including bankruptcy proceedings**, whether initiated by the creditor agency, the debtor, or any party.  (emphasis added)

31 CFR 285.12 (d), as cited above, only provides for a stay from mandatory referral during a bankruptcy proceeding until a debt becomes legally enforceable. Once a debt is legally enforceable then the mandatory referral requirement becomes effective immediately.

The fact that the Appellant's disgorgement debt to SEC was subject to mandatory referral to Treasury for centralized collection is also irrefutable based upon SEC's own actions and admissions. Exhibit 2, is a copy of the Letter of Notification sent by SEC to the Appellant dated February 1, 2005. This document is the DCIA's statutorily required due process letter required to be sent to the debtor at least 60 days in advance of referring the account to Treasury's Offset Program (TOP) . TOP matches Federal payments against reported debts owed to the Government. When a match occurs, the payment is

4

intercepted and offset up to the amount of the debt. Amended OMB Circular No. A-129 (November 16, 2000) and 31 C.F.R. 285.

Exhibit 3, an SEC document, establishes the fact that on August 29, 2005, the debt was sent to Office of Chief Counsel for Treasury Referral. "A debt is considered 180 days delinquent if it is 180 days past due and is legally enforceable." 31C.F.R. 285.12(c)(3)(i). "A debt is past-due if it has not been paid by the date specified in the agency's initial written demand for payment or applicable agreement or instrument (including a post-delinquency payment agreement) unless other satisfactory payment arrangements have been made." Id.

Furthermore, on page 7 of its Objection To Debtor's Petition To Disallow Proof of Claim (Docket # 41), SEC states the following:

> "Zandford's unpaid debt to the Treasury Department was sent from the Commission's Philadelphia District office to its Washington D.C. office for, through which all referrals are made. Zandford's debt was assigned referral Number 2005-59, and on September 1, 2005, the debt was referred to Treasury Department. Shortly after the referral, the Treasury Department returned the debt to the Commission for collection. At that time, and continuing until today, the Treasury has been in the process of implementing a completely new debt tracking system. In fact, since September 2005 and until very recently, Treasury was not accepting the referral of debts from any agency, and as of today, the Commission has yet to refer any debts to Treasury under the new system".

The fact that the return of SEC's referral to Treasury for some technical reason coincided with the Appellant's bankruptcy, does not confer an exemption to SEC from statutory referral requirement of DCIA. 31 CFR 285.12 (d) as cited above clearly states that mandatory referral is stayed during the bankruptcy proceeding.

However, the DCIA has granted the Secretary of Treasury the authority to grant exemptions from mandatory referral to Treasury. The statute authorizes the Secretary to grant exemptions at the request of the head of an agency, or upon the Secretary's own initiative and determination. 31 CFR 285.12 (d)(5) (i) . SEC never applied for such an exemption after its referral of the Appellant's debt to Treasury was returned for technical reasons. Thus, SEC's filing of its Proof of claim in the Bankruptcy Case was and remains in direct violation of the DCIA and its implementing regulations.

5

In its defense to the Appellant's challenge to their standing pursuant to the DCIA, SEC relied on §900.8 of the federal FCCS (31 CFR Chapter IX and Parts 900, 901, 902, 903, and 904), which states the following:

> "The standards in this chapter do not create any right or benefit; substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person, nor shall the failure of an agency to comply with any of the provisions of parts 900-904 of this chapter be available to any debtor as a defense."

The Bankruptcy Court agreed with the SEC's defense based on §900.8 of the FCCS, and denied the Appellants Petition To Disallow SEC's Proof Of Claim, and later denied the Appellant's Motion For Reconsideration on the same ground.

In its ruling the bankruptcy Court committed an error of law. FCCS's §900.1 (**Prescription of standards**), state the following:

> "(a) The Secretary of the Treasury and the Attorney General of the United States are issuing the regulations in parts 900—904 of this chapter under the authority contained in 31 U.S.C. 3711(d)(2). **The regulations in this chapter prescribe standards for Federal agency use in the administrative collection. offset, compromise, and the suspension or termination of collection activity** for civil claims for money, funds, or property, as defined by 31 U.S.C. 3701(b) ...." (emphasis added)

> "(b) **Additional rules governing centralized administrative offset and the transfer of delinquent debt to the Department of the Treasury (Treasury) or Treasury-designated debt collection centers for collection (cross-servicing) under the Debt Collection Improvement Act of 1996, Public Law 104—134, 110 Stat. 1321, 1358 (April 26, 1996), are issued in separate regulations by Treasury. Rules governing the use of certain debt collection tools created under the Debt Collection Improvement Act of 1996, such as administrative wage garnishment, also are issued in separate regulations by Treasury. See generally 3l. CFR part 285.** (emphasis added)

These regulations apply to, and enforce, debts subject to centralized administrative collection by Treasury (i.e. administrative collection. offset, compromise, and the suspension or termination of collection activity ) and do not apply to collection of debts

in bankruptcy cases. Given that the debt in this matter was subject to mandatory referral to Treasury's TOP, but the referral had not yet been completed, §900.8 does not confer standing to SEC to file a Proof of Claim in a bankruptcy case in contravention of the DCIA. The Bankruptcy Court's ruling in this matter has for all practical purposes neutralized the DCIA and its implementing regulations, thus creating a significant and material conflict between a none-bankruptcy Federal law that governs the case and bankruptcy law.

The Bankruptcy Court's ruling in the adversarial proceeding has raised an issue of first impression- whether a bankruptcy pre-empts the DCIA's mandatory requirement of referring debts that are 180 days or more delinquent to Treasury's FMS for centralized collection.

## II. APPLICABLE STANDARD

### A.    CORE AND NONE-CORE MATTERS

If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding. Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987); see also, In re Guild and Gallery Plus, Inc. (Torkelson), 72 F.3d 1171, 1178 (3d Cir. 1996). Wood thus posited that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Wood, 825 F.2d at 97.

Significantly, the Third Circuit has adopted the Wood approach. See, e.g., Beard v. Braunstein, 914 F.2d 434, 445 (3d Cir. 1990) (analyzing under 1st 2nd and 5th Circuit approaches). The Third Circuit's test for a core proceeding examines whether the proceeding at issue "[1] invokes a substantive right provided by Title 11 . . . or [2] if it is a proceeding that, by its nature, could arise only in the context of a Bankruptcy Case".

See, Halper, at 836, (quoting Guild and Gallery, 72 F.3d at 1178). This inquiry serves to ensure that the exercise of 'core proceeding' jurisdiction by the Bankruptcy Court does not extend beyond constitutional limits as discussed in Northern Pipeline Const. Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S. Ct.2858, 73 L.Ed.2d 598 (1982).

The Third Circuit has also established a much cited standard for determining whether a proceeding is "related." In Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984) the Court described the test as whether " the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."

### III. DISCUSSION

**B.     THE ADVERSARIAL PROCEEDING AGAINST SEC WAS A NONE-CORE, RELATED MATTER**

The Third Circuit's test looks specifically to whether the action asserts a 'substantive right provided by Title 11 or if it is a proceeding that, by its nature could arise only in the context of a bankruptcy case." Halper, 164 F.3d at 836. SEC's disgorgement action against the Appellant which had been commenced in the United States District Court for the District of Maryland long before the filing of the bankruptcy case does not assert a substantive right under Title 11. Furthermore, SEC's pre –petition disgorgement action against the Appellant would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state court, or a Federal district court. Exhibit 1, the estate administrator's letter, plainly establishes the fact that prior to the bankruptcy, SEC was preparing a writ of garnishment to be executed in a State Court or a Federal district court. Thus, in both instances the Appellant's adversarial proceeding against the SEC fails this Circuit's Core test, and as such, it constitutes a none-core proceeding.

Given that for the time being the Appellant will assume that the adversarial action against SEC was a related matter in that the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy, then the Bankruptcy Court's judgment without the express consent of the parties is not final, and the

bankruptcy Court must have submitted its proposed findings of facts and conclusions of law to the District Court Section pursuant 157(c)(1).

## IV. CONCLUSION

For the reasons set forth, The Bankruptcy Court's judgment in the adversarial proceeding before it is not final pursuant to Section 157 (c)(1). the Appellant respectfully requests that the Court grant him leave to amend his issues of appeal to include the 'none-core' issue discussed above.

Respectfully submitted,

*[signature]*

Charles Zandford
420 Union Street
Milton, DE. 19968
(302) 351-4693

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true copies of Appellant's Motion For Leave of Court To Amend Issues On Appeal have been served via first class mail, postage prepaid, on this 1st day of February, 2007, upon the following:

Jeffery S. Ciannciulli
Suite 500
1339 Chestnut St.
Phila., PA. 19107-3519

Amy J. Greer Esq.
SEC
701 Market St.
Suite 2000
Philadelphia, PA. 19106


Charles Zandford
420 Union St.
Milton, DE. 19968
(302) 352-4693

Charles Zandford
420 Union St.
Milton, DE. 19968



Mr. Roland Eberhard
U.S. District Court
4209 Federal Building
844 King St., Room 4209
Wilmington, DE. 19801

LAW OFFICES

# OBRECHT AND OBRECHT

SUITE 101
877 OLD BALTIMORE-ANNAPOLIS BOULEVARD
SEVERNA PARK, MARYLAND 21146

\*CHARLES F. OBRECHT, JR.
GEORGE F. OBRECHT, III

\*LICENSED TO PRACTICE BEFORE
THE PATENT AND TRADEMARK OFFICE.
UNITED STATES DEPARTMENT OF COMMERCE

AREA CODE 410
544-9521

AREA CODE 410
544-1423
TELECOPIER

January 23, 2007

Mr. Charles Zandford
420 Union Street
Milton, Delaware 19968

Re:   **Estate of Carol J. Zandford**

Dear Mr. Zandford:

Following our telephone conversation on January 22, 2007, I reviewed portions of my file. My notes reveal that my first contact with the SEC attorney was on November 29, 2005 when Amy Greer, District Trial Counsel telephoned me. This was about two weeks after I had filed the First Administration Account which I mailed for filing with the Register on November 16, 2005. On November 30, 2005, Ms. Greer wrote to me and requested that I withhold your distributive share (presumably under the First Administration Account) pending her securing a Writ of Garnishment. Ms. Greer's letter recited the precise amount of your distributive share as set fort in the First Administration Account. I presume that Ms. Greer retrieved that information by accessing the First Administration Account because until that account was filed, neither the Register nor the interested persons could have known what, if any, distribution there might be. You may recall that when I became the personal representative in or about April, 2005, the estate seemed more debt-ridden than asset-laden.

With regard to the final distribution of approximately $15,000 under the Supplement To Third and Final Administration Account, I reaffirm what I said in my January 10, 2007 letter to all interested persons. Distribution to the heirs will be withheld until I determine that the recent claim by the creditors' attorney has been satisfactorily resolved. In that regard, I have been informed by the bankruptcy trustee that your distributive share would still have to be paid to him, as trustee.

Sincerely yours,

George F. Obrecht, III

GFO,III:mln



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
PHILADELPHIA DISTRICT OFFICE
MELLON INDEPENDENCE CENTER
701 MARKET STREET
SUITE 2000
PHILADELPHIA, PENNSYLVANIA 19106-1532

February 1, 2005

Charles Zandford
238 Mercer Street
Princeton, N.J. 08540

RE: Past due amount: $ 343,000.00 (plus additional interest, penalties and fees as allowed by law)
Date amount became past due: March 27, 2004
<u>Securities and Exchange Commission v. Zandford</u>
Civil Action No. AMD 95-CV-2826 (D. Md.)

**Reply Date:** April 2, 2005

Dear Mr. Zandford:

### TREASURY OFFSET PROGRAM (TOP)

The Securities and Exchange Commission intends to seek collection of the debt described above through the Treasury Offset Program (TOP).

**Use of TOP does not prevent the Commission from seeking to collect amounts owed by you using any other means permitted by law. We will continue to add interest, penalties, and other charges to unpaid amounts, as required by law.**

You have not paid the amounts ordered in the above-captioned proceedings. If you do not pay the required amounts, or if you do not take other action described in this letter before the Reply Date given above, the Commission will seek to collect the amounts you owe by submitting these amounts to the Treasury Offset Program (TOP). A copy of the order entered against you in the above-captioned proceedings requiring you to pay the amounts we intend to submit to the TOP is enclosed.

Once the amounts you owe are submitted to the TOP, the U.S. Department of the Treasury (U.S. Treasury) will reduce any eligible Federal payments due to you up to the

total amount owed. This process, known as "offset," is authorized by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996. The U.S. Treasury is not required to send you any further notice before a payment is offset.

Federal payments eligible for offset include any amounts due to you in the form of:

- income tax refunds;
- Federal salary, including military pay;
- Federal retirement payments, including military retirement pay;
- contractor/vendor payments;
- certain Federal benefit payments, such as Social Security, Railroad Retirement (other than tier 2), and Black Lung (part B) benefits (as permitted by law); and
- other Federal payments, including certain loans to you, that are not exempt from offset.

Before we submit the amounts you owe to the TOP:

- <u>You may pay the amounts owed in full</u>: To pay:

  o send a check or money order, payable to Securities and Exchange Commission, for the full amount that you owe to: Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; or

  o if the attached order requires payment to a payee other than the Securities and Exchange Commission, send a check or money order to that payee as directed by the order.

  Send a copy of your check or money order to the undersigned.

- <u>You may agree to a payment plan</u>: If you are unable to pay the amounts in full, you may contact the Office of Chief Counsel, Division of Enforcement, at (202) 942-4674, agree to a payment plan acceptable to the Commission, and make payments required in the payment plan.

- <u>You may request a review of the amounts owed</u>:

  o You may obtain a copy of documents in the possession of the Commission that show payments recorded in connection with the amounts owed.

  o You may request that the Commission review the amounts owed if you believe that all or any portion of the amount we intend to submit to TOP has been paid or that the amounts have been otherwise discharged (e.g., as the result of bankruptcy proceedings). However, no attempts to reargue or collaterally attack the findings that resulted in the order will be considered.

- You may be entitled to an oral hearing as part of the review, but only if the Commission decides, within its discretion, that a determination of the validity of the amounts we intend to submit to the TOP cannot be resolved by review of the documentary evidence.

- You must request a review, and provide evidence you believe relevant to a determination, by the Reply Date stated in this letter. If you do not do so, the Commission will proceed to seek collection through the TOP. However, this letter does not prevent the Commission from taking action to effect an offset sooner, to the extent permitted by law.

**Any request for a review must be submitted in writing to: Secretary, Securities and Exchange Commission, 450 5th St., N.W., Washington, D.C. 20549, with a copy to the undersigned.**

BANKRUPTCY: If you filed for bankruptcy and the automatic bankruptcy stay is in effect, you are not subject to offset while the stay is in effect. Please notify us of the stay by sending evidence concerning the bankruptcy to Secretary, Securities and Exchange Commission, 450 5th St., N.W., Washington, D.C., 20549.

IF YOU FILE A JOINT INCOME TAX RETURN: If you file a joint income tax return, you should contact the Internal Revenue Service before filing your return regarding the steps to take to protect the share of the income tax refund that may be payable to your spouse, if your spouse does not also owe delinquent amounts to the U.S. Government.

IF YOU ARE A FEDERAL EMPLOYEE:

- Your current net disposable pay is subject to offset if you do not pay your debt or take other action described above. Under the TOP, the U.S. Treasury will deduct up to 15% of your disposable net pay beginning in the pay period that your debt is submitted to the TOP, and continuing every pay period until your debt, including interest, penalties and other costs, is paid in full.

- If you wish to petition for a waiver or hearing to dispute the existence or amount of the debt, or the amount of the payroll deduction, you must file a written request for a hearing no later than 15 days from the date of this letter. The timely filing of a petition for hearing will stay the commencement of offset proceedings. A final decision on the hearing (if one is requested) will be issued no later than 60 days after the filing of a petition requesting the hearing (unless extended by the hearing official).

If you make or provide any knowingly false or frivolous statements, representations, or evidence, you may be liable for criminal penalties under 18 U.S.C. §§ 1001, and 1002, or other applicable statutes, and, if you are a federal employee, you may be subject to disciplinary actions for such statements, representations or evidence.

Unless prohibited by law or contract, we will promptly refund to you any amounts paid by you or deducted from federal payments due to you which are later waived or found not owed to the United States.

If you have any questions about this letter or your rights, you should contact the Office of Chief Counsel, Division of Enforcement, at (202) 942-4674 immediately.

Very truly yours,

Amy J. Greer
District Trial Counsel
Securities and Exchange Commission
Suite 2000
701 Market Street
Philadelphia, PA 19106
(215) 597-0687

Enclosure

## Securities and Exchange Commission Division of Enforcement
### Form 3: Quarterly Report of Collection Efforts For Delinquent Debts.

*[See the CATS 2000 page on Enforcenet for instructions for completion of this Form.]*

**Party Name:** CHARLES ZANDFORD  **SSN/TIN:** XXX - XX - 5656

**CATS No:** P-00121-E   **Name:** ZANFORD, CHARLES   **Court/AP No:** 95-2826   **Type:** CIVINJ
**Date Filed:** 9/22/1995   **Judgment Date:** 3/2/1999
**Branch Chief:** MCGLYNN, BRENDAN P   **Organization Code:** 15211
**Primary Staff Assigned:** GREER, AMY J   **Phone:** 215-597-0687

|  | Disgorgement | ITSA | Remedies | Undertaking |
|---|---|---|---|---|
| Joint/Several (For Amounts, See Form for Starred *** Party) | N/A | N/A | N/A |  |
| Amount Collected | $0.00 | $0.00 | $0.00 | $0.00 |
| Balance Owed | $343,000.00 | $0.00 | $0.00 | $0.00 |
| Pay To | COURT | N/A | N/A | N/A |
| Date Delinquent | 3/27/2004 |  |  |  |

**Comments:**

**Debt Comments:**

**Currently at Treasury:** No   **Referral Date:**
*If debt is currently at Treasury, STOP HERE, initial and return this Form.*

**Exempt From Treasury Referral because:** *If correct exemption displayed, ignore this Item. If exempt, check one:*

**FMS Exempt:** _____ Incarcerated
_____ Entity is defunct
_____ Foreign National Residing Abroad
_____ Deceased (Attach confirmation, e.g., asset search indicating death certificate issued).

**Current Status of SEC Collection Efforts** *If correct status displayed, ignore this Item. To enter or update status, check all that apply:*

**Collection Status:**
- Sent to OCC

_____ Stay in effect.
_____ Newly delinquent; Judgment Recovery Plan (JRP) to be submitted.
_____ JRP submitted, not yet implemented.
_____ In Active SEC litigation – Amount collected through litigation to date for this party: _____
_____ Receiver collecting assets – Amount collected by receiver to date for this party: _____
_____ In Bankruptcy
_____ On Appeal
✓ Sent to Office of Chief Counsel for Treasury Referral  8/29/05
_____ Commission memo pending
_____ Terminated
_____ Other (Explain)

**Judgment Recovery Plan (JRP)** *JRP required for all delinquent debts*

- **Complete JRP:** *If correct JRP displayed, ignore this section. To enter or update JRP, check one:*

  **Plan Type:**
  **Refer to Treasury**

  _____ Judgment/order will be enforced through in-house litigation.
  _____ Judgment/order will be referred to Treasury for collection.
  _____ Collection has been stayed.
  _____ Receiver will be appointed to collect funds.
  _____ Recommendation will be sent to Commission to settle, discharge or terminate debt.

- **File JRP:** *File Plan within 60 days of date of delinquency (completion of this Form constitutes filing).*
  **JRP Due Date:**   **JRP Filing Date:**

- **Implement JRP:** *Implement JRP within 180 days of date of delinquency.*
  **JRP Implementation Due Date:**   **Date JRP Implemented:**

Continued on Page 2

Information generated by CATS2000   **Run Date:** Friday, August 26, 2005

TOP Letter  *Send TOP letter no later than 120 days after date of delinquency.*

    TOP Letter Due Date :         TOP Letter Date Sent: 2/1/2005

        If due, was the TOP letter sent? YES____     NO____
        If NO, state reason_____
        If YES, attach copy.

Check One:

First Form 3 Submission _____ Update with Changes ___✓___ Revied/No Changes _____ Date: 8-26-05

Reviewed and verfied by: Branch Chief:_____

Information generated by CATS2000                               Run Date: Friday, August 26, 2005