## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**IN RE: Charles Zandford**

---

| | | |
|---|---|---|
| **Charles Zandford,** | ) | |
| | ) | |
| **Appellant** | ) | **Civil Action No. 07-30 (GMS)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **Securities and Exchange Commission** | ) | |
| | ) | **Bankruptcy Case No. 05-13305** |
| **Appellee** | ) | **AP 06-81** |

## APPELLANT'S MOTION IN OPPOSITION TO SEC'S MOTION TO DISMISS APPEAL

---



BD Scanvq

**Charles Zandford**
**420 Union Street**
**Milton, DE.  19968**
**(302) 351-4693**

1

Charles Zandford ('the Appellant'), respectfully submits this Motion in Opposition to the Securities and Exchange Commission's ('SEC') Motion To Dismiss Appeal, and requests from the Court for reasons discussed below, and in the interest of justice, to assume full jurisdiction over this appeal from the United States Bankruptcy Court's ruling pursuant to 28 U.S.C. § 158 ( c) (1).

## I. JURISDICTION

The District Court could on its own motion or in the' interest of justice' assume jurisdiction over this appeal, pursuant to 28 U.S.C. § 158 ( c) (1).

## II. VENUE

Venue is proper in that the underlying bankruptcy was filed with the United States Bankruptcy Court for the District of Delaware.

## III. STATEMENT OF THE CASE

### A.   This case constitutes a "none core", but otherwise related case involving interstate commerce.

The adversarial proceeding in the Bankruptcy Court challenged SEC's legal standing to file a Proof of Claim because its Proof of Claim violated the statutory requirement of the Debt Collection Improvement Act of 1996( DCIA) ( Pub. L. 104-134), and its implementing regulations 31 CFR Part 285 et seq., which affect interstate commerce. The DCIA requires mandatory referral of valid, legally enforceable delinquent debts to Treasury's Financial Management Services (FMS) for processing and collection through its cross servicing program . See Exhibits 1& 2.

The source of this adversarial proceeding was a pre-petition SEC action which did not arise in the context of Title 11, it did not assert a Title 11 right, and survives outside of the Bankruptcy Court. The issues in the adversarial proceeding against the SEC, and in this appeal, require substantial and material consideration of none-Title 11 Federal law

1

involving the United States Treasury, its agencies, statutes, rules and regulations that affect interstate commerce 28 U.S.C. § 157 (d). The functions of the Treasury and its Financial Management Services affect interstate commerce. Financial Management Service (FMS) provides central payment services for all Executive Branch agencies, operates the Federal Government's collections and deposit systems, provides government-wide accounting services, and manages the collection of delinquent debt.

This appeal raises an issue of first impression. To this date, no court of competent jurisdiction has conducted an inquiry into the application of the DCIA and its implementing regulations specifically to determine and identify the circumstance(s), if any, that would permit SEC, or another Federal agency not exempt from the DCIA, to circumvent the DCIA's statutorily mandated debt referral requirement.

Because the resolution of the issues involved in this appeal require substantial and material consideration of the DCIA and its implementing regulation, 31 CFR Part 285 et seq., the District Court is more proficient in dealing with such matters than the panel of 3 bankruptcy judges.

Furthermore, The Appellant's adversarial proceeding constituted a 'none-core', but otherwise related case which under the Third Circuit's precedent was eligible for mandatory withdrawal to the District Court. The Appellant was a party to the proceeding, the resolution of the proceeding required consideration of Bankruptcy Code and a none-code Federal statute which regulated interstate commerce. However, during the pendency of the bankruptcy case, the appellant was unaware of the law, and the distinction between 'core' and 'none core' adversarial proceedings, and consequently failed to timely file the appropriate motions for withdrawal.

Under the Third Circuit precedent, the adversarial proceeding against SEC constituted a 'none-core', but 'otherwise related case.' In this regard, The Third Circuit has adopted the Wood approach. Matter of Wood, 825 F.2d 90, 97 (5th Cir. 1987); see also, In re Guild and Gallery Plus, Inc. (Torkelson), 72 F.3d 1171, 1178 (3d Cir. 1996). Wood posited that "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Wood, 825 F.2d at 97. See, e.g., Beard v.Braunstein, 914 F.2d 434, 445 (3d Cir. 1990) (analyzing under 1st 2nd and 5th Circuit approaches). The

2

Third Circuit's test for a core proceeding examines whether the proceeding at issue "[1] invokes a substantive right provided by Title 11 . . . or [2] if it is a proceeding that, by its nature, could arise only in the context of a Bankruptcy Case"., This inquiry serves to ensure that the exercise of 'core proceeding' jurisdiction by the Bankruptcy Court does not extend beyond constitutional limits as discussed in Northern Pipeline Const. Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S. Ct.2858, 73 L.Ed.2d 598 (1982).

The Third Circuit's test looks specifically to whether the action asserts a 'substantive right provided by Title 11 or if it is a proceeding that, by its nature could arise only in the context of a bankruptcy case." Halper, 164 F.3d at 836. SEC's disgorgement action against the Appellant which had been commenced in the United States District Court for the District of Maryland long before the filing of the bankruptcy case does not assert a substantive right under Title 11. Furthermore, SEC's pre–petition disgorgement action against the Appellant would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a State Court. The Estate administrator's letter, Exhibit 3, plainly establishes the fact that prior to the bankruptcy, SEC was preparing a writ of garnishment to be executed in a State Court. Thus, in both instances the Appellant's adversarial proceeding against the SEC fails this Circuit's 'core' test, and

as such requires that all parties must give express consent to the Bankruptcy Court before it can enter a final order or judgment. In absence of express consent of all parties the Bankruptcy Court may hear the proceeding but may not enter a final order or judgment. Instead, the Bankruptcy Court submits its proposed findings of facts and conclusions of law to the District Court pursuant to Section 157(c)(1) ). The Bankruptcy Court's judgment in this matter is not final.

The Third Circuit has also established a standard for determining whether a proceeding is "related." In Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984) the Court described the test as whether " the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." The outcome of this proceeding does affect the bankruptcy estate, should the Appellant prevail SEC must withdraw its proof of claim which would then leave a surplus in the bankruptcy estate.

### B. The Appellant is a "Person Aggrieved "

The Appellant does not challenge the validity or the collectability of the disgorgement order. However, by law this disgorgement debt is subject to mandatory collection by Treasury's TOP, and not the SEC in a Bankruptcy Court. That is the law. This fact was also confirmed by SEC's letter of notification dated February 1, 2005. See Exhibit 4. and further evidenced in Exhibits 5 & 9. Therefore, the manner in which this debt will be collected affects the bankruptcy estate.

Like all other Federal Agencies, SEC's delinquent debt collection procedures are subject to the DCIA's statutory requirement. On September 17, 1996, SEC entered into an agreement with FMS, by which FMS performs collection services pursuant to the DCIA on SEC's behalf. SEC's Final collection rules pursuant to the DCIA became effective on November 26, 2001. As part of its agreement with FMS, SEC, like other Federal agencies was required to sign a Letter of Agreement (LOA). **One of the provisions of this LOA is that the creditor agency will stop its own efforts to collect on accounts referred to FMS for debt collection services**. See Exhibit 6, page 17, para. 3.

Therefore, should the Court determine that pursuant to the DCIA this debt is eligible for mandatory referral to Treasury's FMS, SEC must cease all of its collection activities in the Bankruptcy Court and withdraw its Proof of Claim, which would effectively conclude the bankruptcy case, and leave a surplus in the bankruptcy estate. The Treasury does not litigate, or collect from bankruptcy courts. Treasury has numerous statutory collection tools, and litigation as its last tool of collection is undertaken by the Department of Justice in a District Court. 31 CFR § 900.3.

Therefore, the Appellant has standing as " person aggrieved," to file this appeal. There is a glaring difference between paying the SEC (which is barred by the DCIA to file a Proof of Claim in this bankruptcy case) a large lump sum of money versus referring the disgorgement order to Treasury as required by the DCIA for collection through TOP. Therefore, the Bankruptcy Court's order being appealed here affects the bankruptcy estate, and the Appellant has a substantial financial stake in bankruptcy estate if SEC is determined to lack standing to file a Proof of claim.

4

What could transpire after the conclusion of this bankruptcy case in other forums and under other Federal or State laws to collect the disgorgement debt, if not collected through TOP, falls beyond the reach of Title 11 jurisdiction, and does not conflict with the " person aggrieved" doctrine of Title 11 as it applies to the instant case.

## IV. BACKGROUND

SEC's claim arises from a disgorgement order issued by Judge Andre M. Davis of the U.S. District Court for the District of Maryland (Civil Action No. AMD 95-CV-2826) on March 2, 1999, and re-instated after a lengthy appellate process on February 24, 2004, ordering disgorgement in the amount of $343,000 to be paid within 30 days. No payment was made due to the Appellant's lack of assets, unemployment and physical disability. This debt became delinquent 30 days thereafter – on March 27, 2004, and remains delinquent to this date. This debt constitutes a pre- petition obligation, which at one point in time was subject to collection by a Federal District Court, and was and remains independent of the provisions of Title 11.

On October 11, 2005, the Appellant filed a pro- se no asset Chapter 7 bankruptcy Petition with the United States Bankruptcy Court for the District of Delaware (Case No. 05-13305-PJW). Under Schedule B (Personal Property) the Appellant indicated that his wife had passed away (intestate) and that there was an estate but he did not know how much, if any, he would inherit.

On pages 1 and 2, of their Motion To Dismiss Appeal, SEC writes in part the following:.

"Zandford filed his Chapter 7 Petition in this case on October 11, 2005. At that time, the Commission was not listed among his creditors and Zandford's judgment debt to the Commission of $343,000 plus interest was not listed among his unpaid debts. The Commission was not notified of Zandford's bankruptcy filing. Although he had filed the bankruptcy proceeding as a no asset case, Zandford did, in fact, have assets coming to him from the estate of this late wife. See Docket Entries ## 10, 11, 12, 22".

"The Commission, in attempting to collect its debt, learned of the distribution to be paid to Zandford by the Administrator of his late wife's estate immediately prior to learning that Zandford had filed a bankruptcy. The Commission notified the Administrator of Zandford's late wife's estate of the bankruptcy filing;

> notified the Chapter 7 Trustee of the monies due to be paid to Zandford, which resulted in the Trustee's filing of a Notice to Change Case From No Asset to Asset (Docket # 25); and filed its entry of appearance and Proof of Claim (Docket # 27)."

In response to SEC's misrepresentations, the Appellant respectfully directs the Court's attention to Exhibit 3, a letter from George F.Oobrecht, III Esq. ('the Estate Administrator') which supports the circumstances under which the Appellant had filed a no asset chapter 7 Petition, and had made his initial declaration under Schedule B. This letter also serves to refute SEC's statements cited above, and further lends support to the fact that the adversarial proceeding in this bankruptcy case constituted a 'none-core' proceeding.   Exhibit 3, plainly states that SEC was initially preparing a Writ of Garnishment to collect the Appellant's inheritance. In all likelihood, a Writ of Garnishment would have been issued by a State Court, and it would have been challenged in the appropriate court in the same manner as SEC's Proof of Claim was challenged before the Bankruptcy Court based upon the statutory requirements of the DCIA, and its implementing regulation. 31 CFR Part 285 et seq.

The Appellant did not list SEC as a creditor in his bankruptcy based upon a letter he had received from SEC on February 1, 2005, regarding the transfer of his disgorgement debt to Treasury's Offset Program (TOP). See Exhibit 4. Based upon this letter, the Appellant believed that he was now subject to Treasury regulations, and not SEC.

On February 24, 2005, the Appellant requested a full waiver of the ordered disgorgement based upon his inability to pay. On June 27, 2005, SEC denied the Appellants request for waiver, and thus, the letter of referral to TOP became effective immediately. See Exhibit 5. Between June 27, 2005, and October 11, 2005 (when the Chapter 7 Petition was filed), the Appellant had no indication or reason to believe that the disgorgement debt had not been referred to Treasury's TOP pursuant to the mandatory transfer requirements of the DCIA.

Given that the disgorgement debt owed to Treasury is none-dischargeable, and the fact that TOP matches Federal payments against reported debts owed to the Government (when a match occurs, the payment is intercepted and offset up to the amount of the debt. Amended OMB Circular No. A-129 (November 16, 2000) and 31 C.F.R. 285, there was

6

no compelling reason to include an unchallenged none-dischargeable debt in a no asset Chapter 7 bankruptcy. A none-dischargeable debt survives a Chapter 7 bankruptcy.

Sometime in November 2005, The Appellant received a letter from the Estate Administrator advising him of his distribution share of $75,000. After receiving this letter, the Appellant received a telephone call from the Estate Administrator informing him of SEC's intent to file a writ of garnishment against his inheritance in a State Court. During this conversation, the Appellant authorized the Estate Administrator to inform SEC of the Appellant's bankruptcy. Soon there after, SEC filed a Proof of Claim as an unsecured creditor in the amount of $343,000. Given these unexpected developments, the Appellant hired a bankruptcy attorney for the sole purpose of correcting and amending his Chapter 7 Petition.

## V. THE RESOLUTION OF THIS PROCEEDING REQUIRES SUBSTANTIAL AND MATERIAL CONSIDERATION OF NONE-BANKRUPTCY LAW INVOLVING INTERSTATE COMMERCE.

### C.    STATUTORY FRAMEWORK

31 CFR Part 285 and Part 285.12 contain the implementing rules of DCIA which constitutes the law of this case and are contained in Exhibits 7 and 8. All Federal agencies, including the executive, judicial and legislative departments and agencies, are subject to the requirements of DCIA, unless exempted by law.

1. The Debt Collection Improvement Act of 1996 (DCIA) (Pub. L. 104-134) amends the Debt Collection Act of 1982 and provides for the referral of valid, legally enforceable delinquent debts to the Department of the Treasury for processing through its cross servicing program.

2. Title 31, Code of Federal Regulations, part 285 (31 CFR part 285), contains direction under the DCIA debt collection authorities for administrative offset, tax refund payment offset, salary offset, administrative wage garnishment, and transfer of debts to the Department of the Treasury for debt collection.

3. Title 31, Code of Federal Regulations, parts 900 through 904 - Federal Claims Collection Standards (FCCS) (31 CFR parts 900 - 904), effective December 22, 2000, supersede the FCCS previously issued by the Department of Justice and the General Accountability Office on March 9, 1984 (4 CFR parts 101 - 105). The revised FCCS clarify and simplify Government-wide debt collection procedures and policies, reflecting

the changes under the DCIA, and provides the basic legal framework for collecting claims owed the United States.

Significant Congressional concern over the estimated $47-$100 billion in non-tax delinquent debt owed to the Federal Government resulted in enactment of DCIA, codified at 31 U.S.C. §§3701, 3702, and 3711-3720E. The DCIA requires all federal agencies to transfer past due, legally enforceable, none-tax debts that are more than 180 days delinquent to Treasury for collection by administrative offset and for Cross-Servicing on the agencies' behalf. 31 U.S.C. §3711 (g), and 31 U.S.C. §3716 ( c) (6).

**31 U.S.C. §3711. collection and compromise**.

(g)(1) If a none-tax debt or claim owed to the United States has been delinquent for a period of 180 days -
(A) the head of the executive, judicial, or legislative agency that administers the program that gave rise to the debt or claim shall transfer the debt or claim to the Secretary of the Treasury; and
(B) upon such transfer the Secretary of the Treasury shall take appropriate action to collect or terminate collection actions on the claim. (emphasis added)

**31 U.S.C. §3716. Mandatory Centralized Administrative offset**

(c) (6)    Any Federal agency that is owed by a person a past due, legally enforceable none-tax debt that is over 180 days delinquent, including none-tax debt administered by a third party acting as an agent for the Federal Government, shall notify the Secretary of the Treasury of all such none-tax debts for purposes of administrative offset under this subsection. The Secretary of the Treasury and other Federal disbursing officials will match payments to the debtor from the Federal Government, including Federal salary payments, against these debts. Where a match occurs, and all the requirements for offset have been met, the payment will be offset to satisfy the debt in whole or part. (emphasis added)

Treasury, through its FMS, is responsible for promulgating government-wide debt collection regulations implementing the provisions of the DCIA. The implementing regulations are codified at 31 C.F.R. 285, "Debt Collection Authorities under the Debt Collection Improvement Act of 1996."

Two key components of the DCIA include (1) mandatory referral of delinquent debt to FMS or an approved debt collection center for "cross-servicing" or collection, and (2) mandatory notification of delinquent debt to the Secretary of Treasury for purposes of administrative offset. Implementing regulations for cross-servicing and offset are contained in 31 C.F.R. 285.

The DCIA defines debt or claim to include "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency . . . and includes, without limitation, . . . (D) any amount the United States is authorized by statute to collect for the benefit of any person." 31 U.S.C. § 3701(b)(1)(D).

31 C.F.R. 285.12(c)(1) requires the referral of "any debt that is more than 180 days delinquent to FMS for debt collection services", often referred to as cross-servicing. "A debt is considered 180 days delinquent if it is 180 days past due and is legally enforceable." 31C.F.R. 285.12(c)(3)(i). "A debt is past-due if it has not been paid by the date specified in the agency's initial written demand for payment or applicable agreement or instrument (including a post-delinquency payment agreement) unless other satisfactory payment arrangements have been made." Id. Further, "a debt is legally enforceable if there has been a final agency determination that the debt, in the amount stated, is due and there are no legal bars to collection action." Id. Exceptions to the mandatory referral requirement include debts that are in litigation, being collected by internal offset, or are covered by an exemption granted by the Secretary of the Treasury. 31 C.F.R. 285 (d).

In addition to cross-servicing, the DCIA mandates that agencies notify the Secretary of Treasury of all debts over 180 days delinquent for purposes of administrative offset. 31 U.S.C. § 3716(c)(6). Administrative offset is the "withholding of funds payable by the United States . . . to, or held by the United States for, a person to satisfy a claim." 31 U.S.C. § 3701(a)(1). To accomplish administrative offset, the FMS established the Treasury Offset Program (TOP). TOP matches Federal payments against reported debts owed to the Government. When a match occurs, the payment is intercepted and offset up to the amount of the debt. Amended OMB Circular No. A-129 (November 16, 2000) and 31 C.F.R. 285.

An agency, however, may collect by administrative offset only after adopting, without change, regulations on collecting by administrative offset promulgated by the Department of Justice, the General Accounting Office, or the Department of Treasury; or prescribing regulations consistent with the regulations issued by the named entities. 31 U.S.C. §3716(b). The agency must provide the debtor with a written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section.

## VI.    PURSUANT TO THE DCIA, SEC HAD DETERMINED THAT THE DISGORGEMENT DEBT IS SUBJECT TO MANDATORY REFERRAL TO TOP

Pursuant to 31 U.S.C. §3716(b), on February 1, 2005, SEC sent the Appellant the TOP demand letter. See Exhibit 4. Through this document the Appellant became subject to Treasury's centralized collection process pursuant to 31 C.F.R. 285.12(c)(1). On February 24, 2005, the Appellant officially requested a full waiver of the disgorgement amount from SEC due to inability to pay. On June 27, 2005, SEC denied the Appellant's waiver request. In its letter, SEC stated the following:

" … the Commission staff will not recommend waiving any amounts of the debt owed and that the debt owed would be referred to United States Treasury."    See Exhibit 5.

Exhibit 9, is another Internal SEC document (provided to the Appellant through discovery) which confirms that on August 29, 2005, the disgorgement debt was referred to the office of SEC's Chief Counsel for referral to Treasury.

31 CFR 285.12 (c )(3) (ii) requires that: **"**When a final agency determination is made after an administrative appeal or review process, the creditor agency must transfer such debt to FMS, if more than 180 days delinquent within 30 days after the date of the final decision". See Exhibit 8 at 1-2. **Thus, as required by law the debt in this matter was subject to mandatory referral to FMS' TOP for collection on or about July 27, 2005, several months before the Appellant's bankruptcy**. This referral was never made. During the course of the adversarial proceedings before the Bankruptcy

10

Court SEC offered several excuses for its failure to timely refer this debt to Treasury, but none of them could exempt SEC from mandatory referral of this debt to FMS.

## VII.    A BANKRUPTCY DOES NOT CREATE AN EXEMPTION TO THE MANDATORY REFERRAL REQUIREMENT OF THE DCIA

There are two types of Bankruptcies under the DCIA. First, those debts that are already subject to centralized collection. Second, those debts like the Appellant's, that are legally subject to mandatory transfer for centralized collection but have not yet been transferred due to an exception status- i.e. litigation.

If a debt is already subject to mandatory centralized collection, a bankruptcy stays the collection. 31 CFR 285 (d)(10) state the following:.

> "Creditor agencies are also responsible for notifying FMS immediately if there is a change in the status of the legal enforceability of any debt. For example, if a creditor agency learns that a debtor has filed for bankruptcy protection and the automatic stay is in effect, that creditor agency must notify FMS, in the manner prescribed by FMS, that the debt is no longer legally enforceable.
> Likewise, if the bankruptcy is dismissed, and the debt has not been discharged, and there are no other legal obstacles to collection, the creditor agency should notify FMS immediately that the debt is once again legally enforceable. As a practical matter, this means that creditor agencies must have procedures in place to track the status of their debts which are in bankruptcy and to update FMS promptly..." CFR 285 (d)(10) See Exhibit 7 pages 78939,. and 31 CFR 285 (d)(10)(iv) at 78944.

Those debts that are eligible for mandatory transfer for centralized collection but have not yet been transferred due to an exception status- i.e. litigation, are subject to 31 CFR 285.12 (d) Exceptions to mandatory transfer , which states the following:

(1) A creditor agency is not required to transfer a debt to FMS pursuant to paragraph ( c)(1) **only during such period of time that the debt**:
(B)   The debt is the subject of proceedings pending in a court of competent jurisdiction, **including bankruptcy proceedings**, whether initiated by the creditor agency, the debtor, or any party. (emphasis added).  Pursuant to this rule, the Appellant's bankruptcy simply stayed the mandatory referral requirement. See Exhibit 8, page 2.

SEC argues that its Proof of Claim should not be disallowed because it holds a judicial judgment ordering the payment of disgorgement in the amount of $343,000,

11

which is delinquent, due and collectible. Given this argument, SEC obviously considers this bankruptcy as an exemption from mandatory referral of this debt to Treasury for collection despite its own documented determination of the eligibility of this debt for transfer to Treasury's TOP.

There are no provisions in the DCIA and 31 CFR Part 285 et seq. that allow SEC to circumvent the mandatory transfer requirement of 31 C.F.R. 285.12(c)(1), due to a bankruptcy unless the creditor agency has permission for such an exemption from the Secretary of Treasury.

The DCIA has granted the Secretary of Treasury the authority to grant exemptions from mandatory referral to Treasury. The statute authorizes the Secretary to grant exemptions at the request of the head of an agency, or upon the Secretary's own initiative and determination. 31 CFR 285.12 (d)(5) (i) . See Exhibit 8, p. 3 . SEC never applied for such an exemption . Thus, SEC's filing of its Proof of claim in the Bankruptcy Case was and remains in direct violation of the DCIA and its implementing regulations.

Without explicit permission of the Secretary of Treasury SEC has no legal standing to  circumvent the mandatory referral process of the DCIA and file a proof of claim in a bankruptcy case to collect on a disgorgement debt that they themselves had determined was subject to mandatory transfer to Treasury.

## VIII.  BANKRUPTCY COURT'S RELIANCE ON 31 CFR §900.8 OF THE FCCS TO DENY THE APPELLANT'S ADVERSARIAL PROCEEDING AGAINST SEC CONSTITUITES AN EGREGIOUS ERROR OF LAW

Regulations implementing the DCIA and its amending acts are found in the Federal Claims Collection Standards, FCCS, the joint regulations issued by the Treasury Department and the Attorney General of DOJ. The FCCS was enacted to reflect legislative changes to Federal debt collection procedures enacted under the DCIA of 1996 (DCIA), Public Law 104-134, 110 Stat. 1321-358, as part of the Omnibus Consolidated Rescissions and Appropriations Act of 1996. FCCS sets the standards and lays legal frame work for the DCIA. The revised FCCS clarify and simplify Government-wide debt collection procedures and policies, reflecting the changes under the DCIA

The DCIA requires agencies to transfer a debt or claim that has been delinquent 180 days or more to treasury for collection. 31 C.F.R. 285.12(c)(1). The FCCS, therefore, applies to debts referred to Treasury for Collection. For example, The Nuclear Regulatory Commission Debt Collection Procedure ( which is subject to the DCIA) 10 CFR Part 15 (Federal Register: May 6, 2002 ( Volume 67, number 870 Pages 30315-30324) under its Section 15.41 states the following:

> "This section is amended to delete reference to the GAO, clarify that FCCS applies to debt referred to Treasury for collection (cross-servicing) and include procedure for referring claims that exceed $100,000 to the DOJ for acceptance of the compromise offer." See Exhibit 10 (emphasis added).

The Appellant's disgorgement debt as the record reflects was never referred to Treasury for collection. Moreover, and most importantly, the Appellant has consistently maintained that his debt is subject to the DCIA statutory requirements, therefore, the Bankruptcy Court's verbatim and thoughtless reliance on 31 C.F.R. §900.8 of the FCSS (31 CFR Chapter IX and Parts 900, 901, 902, 903, and 904) as the basis to deny the Appellant's Petition to disallow SEC's Proof of Claim for lack of standing is simply absurd. 31 C.F.R. §900.8 can only be invoked when Treasury's centralized debt collection procedures are challenged by a debtor. The Appellant in this matter has not challenged the DCIA, he is subject to it!

31 C.F.R. §900.8 states the following:

> **No private rights created**. The standards in this chapter do not create any right or benefit, substantive, or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers or any person, nor shall the failure of any agency to comply with any of the provisions of parts 900-904, of this chapter be available to any debtor as a defense

The DCIA, and FCCS were enacted for the benefit of the Federal Government and not the debtor. They were intended to maximize collection of delinquent debts owed to Federal agencies, and minimize the cost of such collection. In view of this purpose, it is clear that Congress did not intend to establish additional rights and administrative or

judicial remedies for the debtors ("[t]he standards in this chapter do not create any right or benefit, substantive or procedural, enforceable at law or in equity by a party against the United States, its agencies, its officers, or any other person")( See 31 C.F.R. 900.8), because providing administrative or judicial appeal of a particular debt collection option would defeat the very purpose of these statutes by impairing the Secretary of Treasury's right to pursue other collection options, including compromise, sale of the debt, or referral to other sources for servicing.

31 CFR §901.1 (d) provides the necessary guidance in this regard, which states the following:

> "...The Department of the Treasury is a debt collection center, is authorized to designate other debt collection centers within the Federal Government based on the debt collection centers' performance in collecting delinquent claims owed to the Government, and may withdraw such designations. Referrals to debt collection centers shall be at the **discretion** of, and for a time period acceptable to, the Secretary. Referrals may be for servicing, collection, compromise, suspension, or termination of collection action." (emphasis added)

Given the discretionary authority of the Secretary of Treasury as to the collection options available to him, it is well established that discretionary determinations are unreviewable by their nature.  See *Rank v. Nimmo*, 677 F.2d 692, 699-700 (9th Cir. 1982). A decision is committed to agency discretion "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.' " *Block v. Community Nutrition Institute*, 467 U.S. 340, 351 (1984).

31 CFR §901.1 (e) states the following:

> "Agencies shall transfer to the Secretary any claim that has been delinquent for a period of 180 days or more so that the Secretary may take appropriate action to collect the claim or terminate collection action.".

Thus, 31 C.F.R. §900.8 denies a debtor from seeking any type of administrative or judicial remedy from the Secretary of Treasury's decisions regarding the manner in which Treasury collects a debt, or disposes of it.

Given that the FCCS applies to debts referred to Treasury for collection, and that the Appellant is seeking to have his debt transferred to Treasury for collection, then 31

14

CFR § 900.8. can not be invoked in this proceeding as a defense by SEC. It is absurdly irrelevant!

## IX.  **CONCLUSION**

Based upon the foregoing, the Appellant respectfully requests that the District Court take jurisdiction over this proceeding pursuant to U.S.C. § 158 ( c) (1).

The Appellant's proceeding against the SEC does not challenge the DCIA and Treasury's centralized debt collection activities. The Appellant seeks to be subject to the DCIA and collection of his debt by Treasury's TOP as was determined by SEC. Therefore, the Bankruptcy Courts reliance on 31 C.F.R. §900.8 constitutes an egregious error of law. 31 C.F.R. §900.8 is invoked in instances when the Treasury's centralized debt collection activity is challenged by a debtor. That is clearly not the case here.

If the Court finds that the disgorgement debt is subject to the DCIA's requirement of mandatory referral to Treasury for collection, then the DCIA, and its implementing regulations prohibit SEC from undertaking an alternative collection procedure – namely filing a Proof of Claim in this bankruptcy proceeding, because Treasury is statutorily mandated to collect this debt on SEC's behalf. In that case, SEC must withdraw its Proof of Claim, and refer the debt to Treasury for collection. This would conclude the bankruptcy case and leave a positive balance in the bankruptcy estate for the Appellant.

Respectfully submitted,

Charles Zandford
420 Union Street
Milton, DE. 19968
(302) 351-4693

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true copies of Appellant's Motion In Opposition To SEC's Motion To Dismiss Appeal have been served via first class mail, postage prepaid, on this 21 day of February, 2007, upon the following:

Jeffery S. Ciannciulli
Suite 500
1339 Chestnut St.
Phila. , PA.   19107-3519

Amy J. Greer Esq.
SEC
701 Market St.
Suite 2000
Philadelphia, PA. 19106

Charles Zandford
420 Union St.
Milton, DE.   19968
(302)  352-4693

Zandford
420 Union St.
Milton, DE. 19968





Mr. Ronald Eberhard
U.S. District Court
4209 Federal Building
844 King St, Room 4209
Wilmington, DE. 19801

U.S.M.S.
X-RAY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**IN RE: Charles Zandford**

| | |
|---|---|
| **Charles Zandford,** ) | |
| ) | |
| **Appellant** ) | **Civil Action No. 07-30 (GMS)** |
| ) | |
| **v.** ) | |
| ) | |
| **Securities and Exchange Commission** ) | |
| ) | **Bankruptcy Case No. 05-13305** |
| **Appellee** ) | **AP  06-81** |

## EXHIBITS 1-10

## OF

## APPELLANT'S MOTION IN OPPOSITION TO SEC'S MOTION TO DISMISS APPEAL

**Charles Zandford**
**420 Union Street**
**Milton, DE.  19968**

# EXHIBIT 1

9-7

## CREDIT AND DEBT MANAGEMENT
## OPERATING STANDARDS AND PROCEDURES HANDBOOK

Payments made by Bureaus to protect the Government's interest in a loan (such as those cited in Chapter 8, Section 6.03) should be considered a part of the loan project and should be handled in conjunction with the subject loan.

Bureaus shall refer delinquent debts to the Department of Justice as soon as there is sufficient reason to conclude that full or partial recovery of the debt can best be achieved through litigation. Referrals to Justice should be made in accordance with the Federal Claims Collections Standards.

See Appendix H-1, Organization Unit Workout Groups for more information.

.04    Collection of Debts Which are Over 180 Days Delinquent

a. Treasury Offset Program (TOP)

The DCIA requires that all Federal agencies seek to recover any debt delinquent by more than 180 days by referring those debts to Treasury for offset in TOP. Please note that it is required after 180 days, although it may be transferred prior to 180 days-see above Section .02 Collection Tools for Debt less than 180 Days, subsection c. Treasury Offset Program. FMS provides additional guidance and information for TOP at http://www.fms.treas.gov/debt/top.html.

b. Treasury Cross Servicing

The DCIA requires that all debts owed to Federal agencies which are more than 180 days delinquent shall be transferred to Treasury or a Treasury designated debt collection center for servicing. The DCIA contains provisions and requirements for exempting certain classes of debts from being transferred for servicing, see http://www.treas.fms.gov/debt. Once debts are transferred to Treasury, Federal agencies must cease all collection activities other than maintaining accounting records for the TOP. FMS provides additional guidance and information for Cross Servicing at http://www.fms.treas.gov/debt/crosserv.html.

## Section 5.0 Due Process Procedures

There are formal due process procedures for debtors who dispute amounts owed or due the Department. Appropriate written demands shall be made promptly upon a debtor of the Federal government in terms which inform the debtor of the basis for the debt, the amount

9-8

CREDIT AND DEBT MANAGEMENT
OPERATING STANDARDS AND PROCEDURES HANDBOOK

due, and the opportunity to review, comment and present information concerning the debt. In the event the debtor disputes the amount of the debt, requests for review and comment must be submitted by the debtor within 30 days from the date of the initial billing or demand for payment. Bureaus must respond promptly to communications from the debtor, within 30 days whenever feasible, and should advise a debtor who disputes a debt to furnish any relevant evidence to support theirs contentions. The debtor shall be provided with a reasonable time period to present evidence that the debtor does not owe the amount claimed.

Such formal due process procedures have been established for loans, administrative and salary offsets, and audit disallowance related to grants.
See http://www.access.gpo.gov/nara/cfr/waisidx_99/15cfr21_99.html and http://www.access.gpo.gov/nara/cfr/waisidx_99/15cfr22_99.html.

## Section 6.0 Reports

### 01. Reports to the Office of Financial Management (OFM)

The accounting office of the Bureau will submit a monthly report to OFM showing the number and dollar value of debts transferred to Treasury's Debt Management Services (DMS) for cross-servicing.

The accounting office of the Bureau will also reconcile their records to the monthly report received from DMS and provide a copy of this reconciliation on a quarterly basis to OFM.

**Exhibit 9-1**

**Debtor**
**Address**

**Re: Amount Owed**

# EXHIBIT 2



# fms.treas.gov
## FINANCIAL MANAGEMENT SERVICE
### PROGRAMS

## A BUREAU OF THE UNITED STATES DEPARTMENT OF THE TREASURY

**Home    Q&A's    Calendar    Publications & Guidance    Programs, Systems & Services    About FMS    A-Z Index**

**Find:** [          ] **In:** [ All FMS Pages ▼ ] [ SEARCH ]    **Advanced Search ▶**

- ▶ Overview
- ▶ Common Questions
- ▶ Cross-Servicing
- ▶ Treasury Offset Program
- ▶ Manuals & Guides
- ▶ Forms
- ▶ Regulations & Guidance
- ▶ Reports & Statistics
- ▶ Training & Events
- ▶ Related Resources
- ▶ Background
- ▶ Contacts

### Cross-Servicing Technical Bulletin 05-15:
### Hurricane Katrina Disaster

Cross-Servicing is the process whereby federal agencies refer delinquent debts to Treasury for collection. The Debt Collection Improvement Act of 1996 (DCIA) makes Treasury responsible for collecting delinquent debts Government wide. The DCIA requires agencies to transfer their delinquent non-tax debt over 180 days delinquent to Treasury. Transfer is the mandatory referral of delinquent debts to Treasury or another Debt Collection Center for purposes of collection. The agency retains responsibility for reporting the debts on the Report on Receivables Due from the Public (for direct and insured loans) and the Report on Guaranteed Loans (for guaranteed loans). The agency is also responsible for removing accounts from its receivables when Treasury directs it to write off the debt.

In order to effectively collect the debts that agencies refer, Treasury issues demand letters, conducts telephone follow-up, initiates skip tracing, refers debts for administrative offset, performs administrative wage garnishment and refers debts to private collection agencies on the debt collection contract.

**Cross-Servicing Implementation Guide**

The Cross-Servicing Implementation Guide is a useful information source that discusses all aspects of Cross-Servicing. The guide not only contains Cross-Servicing contacts, and general information in reference to the DCIA requirements, but outlines the DMS collection process, notice of rights to debtors, fees, the Letter of Agreement, Agency Profile Form, data formats, and reporting information. Below, you may download various forms to utilize such as the Agency Profile, and Debt/Debtor Information forms.

- Complete guide, revised May 2004
  - Steps 1-6: Introduction, statutory requirements, the DMS collection process, notices to debtor, letter of agreement, agency profile form, and certification.
  - Step 7: Data formats and transmissions (both electronic and manual data submissions).

# EXHIBIT 3

LAW OFFICES

## OBRECHT AND OBRECHT

SUITE 101

877 OLD BALTIMORE-ANNAPOLIS BOULEVARD

SEVERNA PARK, MARYLAND 21146

\*CHARLES F. OBRECHT, JR.
GEORGE F. OBRECHT, III

AREA CODE 410
544-9521

\*LICENSED TO PRACTICE BEFORE
THE PATENT AND TRADEMARK OFFICE.
UNITED STATES DEPARTMENT OF COMMERCE

January 23, 2007

AREA CODE 410
544-1423
TELECOPIER

Mr. Charles Zandford
420 Union Street
Milton, Delaware 19968

Re:  **Estate of Carol J. Zandford**

Dear Mr. Zandford:

Following our telephone conversation on January 22, 2007, I reviewed portions of my file. My notes reveal that my first contact with the SEC attorney was on November 29, 2005 when Amy Greer, District Trial Counsel telephoned me. This was about two weeks after I had filed the First Administration Account which I mailed for filing with the Register on November 16, 2005. On November 30, 2005, Ms. Greer wrote to me and requested that I withhold your distributive share (presumably under the First Administration Account) pending her securing a Writ of Garnishment. Ms. Greer's letter recited the precise amount of your distributive share as set fort in the First Administration Account. I presume that Ms. Greer retrieved that information by accessing the First Administration Account because until that account was filed, neither the Register nor the interested persons could have known what, if any, distribution there might be. You may recall that when I became the personal representative in or about April, 2005, the estate seemed more debt-ridden than asset-laden.

With regard to the final distribution of approximately $15,000 under the Supplement To Third and Final Administration Account, I reaffirm what I said in my January 10, 2007 letter to all interested persons. Distribution to the heirs will be withheld until I determine that the recent claim by the creditors' attorney has been satisfactorily resolved. In that regard, I have been informed by the bankruptcy trustee that your distributive share would still have to be paid to him, as trustee.

Sincerely yours,

George F. Obrecht, III

GFO,III:mln

# EXHIBIT 4



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
PHILADELPHIA DISTRICT OFFICE
MELLON INDEPENDENCE CENTER
701 MARKET STREET
SUITE 2000
PHILADELPHIA, PENNSYLVANIA 19106-1532

February 1, 2005

Charles Zandford
238 Mercer Street
Princeton, N.J. 08540

RE:    Past due amount: $ 343,000.00 (plus additional interest, penalties and fees as
       allowed by law)
       Date amount became past due: March 27, 2004 –
       <u>Securities and Exchange Commission v. Zandford</u>
       Civil Action No. AMD 95-CV-2826 (D. Md.)

**Reply Date:** April 2, 2005

Dear Mr. Zandford:

### TREASURY OFFSET PROGRAM (TOP)

The Securities and Exchange Commission intends to seek collection of the debt
described above through the Treasury Offset Program (TOP).

**Use of TOP does not prevent the Commission from seeking to collect
amounts owed by you using any other means permitted by law. We will continue to
add interest, penalties, and other charges to unpaid amounts, as required by law.**

You have not paid the amounts ordered in the above-captioned proceedings. If
you do not pay the required amounts, or if you do not take other action described in this
letter before the Reply Date given above, the Commission will seek to collect the
amounts you owe by submitting these amounts to the Treasury Offset Program (TOP). A
copy of the order entered against you in the above-captioned proceedings requiring you
to pay the amounts we intend to submit to the TOP is enclosed.

Once the amounts you owe are submitted to the TOP, the U.S. Department of the
Treasury (U.S. Treasury) will reduce any eligible Federal payments due to you up to the

total amount owed. This process, known as "offset," is authorized by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996. The U.S. Treasury is not required to send you any further notice before a payment is offset.

Federal payments eligible for offset include any amounts due to you in the form of:

- income tax refunds;
- Federal salary, including military pay;
- Federal retirement payments, including military retirement pay;
- contractor/vendor payments;
- certain Federal benefit payments, such as Social Security, Railroad Retirement (other than tier 2), and Black Lung (part B) benefits (as permitted by law); and
- other Federal payments, including certain loans to you, that are not exempt from offset.

Before we submit the amounts you owe to the TOP:

- You may pay the amounts owed in full: To pay:

  o send a check or money order, payable to Securities and Exchange Commission, for the full amount that you owe to: Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0-3, Alexandria, VA 22312; or

  o if the attached order requires payment to a payee other than the Securities and Exchange Commission, send a check or money order to that payee as directed by the order.

  Send a copy of your check or money order to the undersigned.

- You may agree to a payment plan: If you are unable to pay the amounts in full, you may contact the Office of Chief Counsel, Division of Enforcement, at (202) 942-4674, agree to a payment plan acceptable to the Commission, and make payments required in the payment plan.

- You may request a review of the amounts owed:

  o You may obtain a copy of documents in the possession of the Commission that show payments recorded in connection with the amounts owed.

  o You may request that the Commission review the amounts owed if you believe that all or any portion of the amount we intend to submit to TOP has been paid or that the amounts have been otherwise discharged (e.g., as the result of bankruptcy proceedings). However, no attempts to reargue or collaterally attack the findings that resulted in the order will be considered.

   o  You may be entitled to an oral hearing as part of the review, but only if the Commission decides, within its discretion, that a determination of the validity of the amounts we intend to submit to the TOP cannot be resolved by review of the documentary evidence.

   o  You must request a review, and provide evidence you believe relevant to a determination, by the Reply Date stated in this letter. If you do not do so, the Commission will proceed to seek collection through the TOP. However, this letter does not prevent the Commission from taking action to effect an offset sooner, to the extent permitted by law.

**Any request for a review must be submitted in writing to: Secretary, Securities and Exchange Commission, 450 5th St., N.W., Washington, D.C. 20549, with a copy to the undersigned.**

     BANKRUPTCY: If you filed for bankruptcy and the automatic bankruptcy stay is in effect, you are not subject to offset while the stay is in effect. Please notify us of the stay by sending evidence concerning the bankruptcy to Secretary, Securities and Exchange Commission, 450 5th St., N.W., Washington, D.C., 20549.

     IF YOU FILE A JOINT INCOME TAX RETURN: If you file a joint income tax return, you should contact the Internal Revenue Service before filing your return regarding the steps to take to protect the share of the income tax refund that may be payable to your spouse, if your spouse does not also owe delinquent amounts to the U.S. Government.

     IF YOU ARE A FEDERAL EMPLOYEE:

- Your current net disposable pay is subject to offset if you do not pay your debt or take other action described above. Under the TOP, the U.S. Treasury will deduct up to 15% of your disposable net pay beginning in the pay period that your debt is submitted to the TOP, and continuing every pay period until your debt, including interest, penalties and other costs, is paid in full.

- If you wish to petition for a waiver or hearing to dispute the existence or amount of the debt, or the amount of the payroll deduction, you must file a written request for a hearing no later than 15 days from the date of this letter. The timely filing of a petition for hearing will stay the commencement of offset proceedings. A final decision on the hearing (if one is requested) will be issued no later than 60 days after the filing of a petition requesting the hearing (unless extended by the hearing official).

If you make or provide any knowingly false or frivolous statements, representations, or evidence, you may be liable for criminal penalties under 18 U.S.C. §§ 1001, and 1002, or other applicable statutes, and, if you are a federal employee, you may be subject to disciplinary actions for such statements, representations or evidence.

Unless prohibited by law or contract, we will promptly refund to you any amounts paid by you or deducted from federal payments due to you which are later waived or found not owed to the United States.

If you have any questions about this letter or your rights, you should contact the Office of Chief Counsel, Division of Enforcement, at (202) 942-4674 immediately.

Very truly yours,

Amy J. Greer
District Trial Counsel
Securities and Exchange Commission
Suite 2000
701 Market Street
Philadelphia, PA 19106
(215) 597-0687

Enclosure

# EXHIBIT 5

## MEMORANDUM

TO:       Debra Kittredge

FROM:     Eric Helmer

SUBJECT:   P-00121-E (Charles Zandford)
              Civil Action No. 95-2826 (D. Md.)

DATE:      August 26, 2005

1.     Action Description – Please see attached for action.

2.     Post-Judgment Activity – the TOP demand letter was sent to respondent on February 1, 2005. Respondent forwarded a letter dated February 24, 2005 to staff acknowledging his debt to the Commission, stating his inability to pay and requesting a full waiver of disgorgement ordered in the matter. On April 12, 2005, Staff forwarded a Background Questionnaire and a Statement of Financial Condition to respondent for completion. Respondent forwarded responsive documents to Staff on May 5, 2005. Staff sent a final follow-up letter on June 27, 2005, notifying respondent that based on his current financial condition, the Commission staff will not recommend waiving any amounts of the debt owed and that the debt would be referred United States Treasury.

3.     Respondent was not represented by counsel at the time the TOP demand letter was processed.

4.     Continuing Liaison – Collection matters may be directed to me at (215) 597-0235 and substantive matters regarding the case may be directed to District Trial Counsel Amy J. Greer at (215) 597-0687.

# EXHIBIT 6

## The Letter of Agreement

The Letter of Agreement (LOA)

> ➢ Is a standard agreement for all agencies. Differences which FMS and the agency agree to will be detailed in an addendum to the main document. Each agency needs to review the standard agreement and contact the DMS agency liaison to discuss changes to be incorporated into the addendum and to provide agency names and points of contact for the LOA.

> ➢ Details the terms and conditions of the cross-servicing arrangement agreed to by your agency and DMS.

> ➢ Contains 3 attachments for your information:

>> 1. The Agency Profile Form
>> 2. The agency certification
>> 3. The electronic transmission format

>> A detailed discussion of each of these attachments is contained in this guide (Steps 5, 6, and 7 respectively).

> ➢ Is sent to and signed by an official with the authority to bind the organization at the department, agency, or office level as determined by your organization. Each department or agency must determine at what level the LOA will be signed.

> ➢ Is returned by the signatory agency to FMS' Office of the Assistant Commissioner or the designated DMS Cross-Servicing Liaison. The agency may include the initial Agency Profile Form (Attachment A) with the signed LOA, which will in turn, be forwarded to DMS Cross-Servicing Liaison for processing. Alternatively, the agency may wait and submit the required Profile Form and Debt Certification to their designated liaison when initiating file format testing and debt referral process.

16

Dear [Agency Contact Name]:

This letter is in regard to the Financial Management Service (FMS) providing debt collection services on behalf of the [Agency Name]. These services will be provided in accordance with 31 U.S.C. § 3701 *et seq.*, as amended by the Debt Collection Improvement Act of 1996, to collect delinquent [Agency Name] debt.

The [Agency Name]:

- authorizes FMS to take all appropriate action to enforce collection of accounts referred to FMS, in accordance with applicable statutory and regulatory requirements, and agrees to advise FMS with respect to any statutory and regulatory provisions that uniquely affect [Agency Name] debt collection activities.

- will stop its own efforts to collect on accounts referred to FMS for debt collection services.

- will complete the Agency Profile form attached to this letter as **Attachment A** for [Agency Name] and for each distinct [Agency Name] program with specific debt collection requirements.

- will provide FMS with accurate, appropriate data, in a mutually agreeable medium, to facilitate performance of the debt collection operations, including any updates and corrections to the data, as necessary.

- will provide written certification to FMS (in the form attached to this letter as **Attachment B**) with respect to each debt or group of debts referred to FMS for debt collection services. FMS may suspend debt collection activity if FMS determines that [Agency Name] certification is incomplete, inaccurate or unreliable.

- will agree with FMS to a collection strategy for [Agency Name] (and as necessary for each referring [Agency Name] program) detailing the limitations and parameters required for the compromise, settlement or termination of collection action related to [Agency Name] debt. [Agency Name] will reply within five (5) business days to any FMS requests for information, requests for approval of debtors' compromise offers or installment payment plans and, failing a reply, [Agency Name] authorizes FMS to respond, on [Agency Name] behalf, to debtors' compromise offers or requests for installment payment agreements in a manner deemed appropriate and fair by FMS.

Page 2 – [Agency Contact Name]

- will comply with the requirements of the *Privacy Act of 1974* (5 U.S.C. § 552a), as amended (Privacy Act), as applicable to individual debtors, including the publication of any required Privacy Act notices.

- will publish administrative offset regulations (if not already published).

- will pay services fees and charges to FMS as follows:

    - Fees and charges must be based on the actual costs incurred by FMS and may need to be periodically adjusted. Fees and charges will be retained by FMS from amounts collected on behalf of [Agency Name].

    - Except as set forth below, with respect to accounts referred to FMS for collection (including all post-judgment matters), [Agency Name] will pay to FMS a fee in an amount equal to 18% of funds collected.

    - The fee that [Agency Name] will pay to FMS shall be reduced to an amount equal to 3% of funds collected under one of the following circumstances:

        - When the funds are collected by a private sector collection agency;

        - When the funds are collected by Department of Justice (DOJ) after FMS has referred the account to DOJ, except with respect to accounts referred to DOJ for post-judgment enforcement; or

        - When an offset from the Treasury Offset Program (TOP) occurs.

    - In addition to debt collection service fees due to FMS (and regardless of the amount of the service charge), if applicable, [Agency Name] will pay all contingency fees and other charges due to private sector collection agencies, DOJ, Internal Revenue Service for tax refund offset, FMS for Treasury Offset Program (TOP) fees, or any other Federal agency for services rendered relating to debt collection.

    - FMS is entitled to its service fee for all collections received, either by FMS or the [Agency Name], after FMS initiates collection action, including the issuance of demand letters or other attempts to contact the debtor.

18

# EXHIBIT 7



Thursday,
December 26, 2002

## Part V

# Department of the Treasury

**Fiscal Service**

**31 CFR Part 285**
**Centralized Offset of Federal Payments to Collect Nontax Debts Owed to the United States; Final Rule**

## DEPARTMENT OF THE TREASURY

### Fiscal Service

### 31 CFR Part 285

### RIN 1510–AA65

### Centralized Offset of Federal Payments to Collect Nontax Debts Owed to the United States

**AGENCY:** Financial Management Service, Fiscal Service, Treasury.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** This interim rule describes the general rules and procedures applicable to the centralized offset of Federal payments to collect delinquent, nontax debts owed to Federal agencies. The Department of the Treasury's Financial Management Service has established the Treasury Offset Program (TOP) in order to centralize the process by which Federal payments are withheld or reduced (in other words, offset) to collect delinquent debts. This interim rule specifically applies to the centralized offset of all types of Federal payments by Federal disbursing officials to collect delinquent, nontax debts owed to the United States. Therefore, this interim rule affects persons who owe delinquent, nontax debts to the United States and who receive Federal payments. It also affects Federal agencies that are owed delinquent debts and that disburse and certify Federal payments. This rule does not apply to collection of child support debts and other debts owed to States.

**DATES:** This rule is effective December 26, 2002. Comments must be received by January 27, 2003.

**ADDRESSES:** All comments should be addressed to Gerry Isenberg, Financial Program Specialist, Debt Management Services, Financial Management Service, Department of the Treasury, 401 14th Street, SW., Room 151, Washington, DC 20227. A copy of this interim rule is being made available for downloading from the Financial Management Service Web site at the following address: *http://www.fms.treas.gov/debt.* Comments may also be received via the internet as directed on the Web site.

**FOR FURTHER INFORMATION CONTACT:** Gerry Isenberg, Financial Program Specialist, at (202) 874–6660; Tricia Long, Attorney-Advisor at (202) 874–6680.

**SUPPLEMENTARY INFORMATION:**

## Background

A major goal of the Debt Collection Improvement Act of 1996 (DCIA), Pub. L. 104–134, 110 Stat. 1321–358 *et seq.* (April 26, 1996), is to increase the collection of delinquent, nontax debts owed to the Federal Government. Among other things, the DCIA established a centralized process for withholding or reducing eligible Federal payments to pay the payee's delinquent debt owed to the United States. *See* 31 U.S.C. 3716(c), 31 U.S.C. 3720A(h), and 31 CFR 901.3. This process is known as "centralized offset" or "offset".

The Financial Management Service (FMS), a bureau of the Department of the Treasury (Treasury), disburses almost 900 million payments annually for the Federal government and is responsible for the implementation of centralized offset of Federal payments for the collection of delinquent, nontax debt. To meet this and other debt collection responsibilities, FMS has established TOP. By centralizing offset through TOP, FMS has consolidated and simplified debt collection procedures for the Federal Government. TOP allows agencies to submit debts to one centralized location for offset of all eligible Federal payments. By submitting debts to TOP to comply with 31 U.S.C. 3716(c)(6) (for offset of nontax payments), agencies simultaneously will meet the requirement to submit past-due, legally enforceable debts to Treasury for purposes of tax refund offset. *See* 31 U.S.C. 3720A(a). TOP also provides a mechanism for Federal agencies to collect debt through the centralized offset of the salaries of Federal employees. *See* 31 CFR 285.7.

TOP works as follows. Creditor agencies submit information about delinquent debts to FMS, which maintains the information in its delinquent debtor database. Payment agencies prepare and certify payment vouchers to FMS and disbursing officials at other Federal agencies (such as Department of Defense or the United States Postal Service), who then disburse payments. The payment vouchers contain information about the payment including the name and taxpayer identifying number (TIN) of the recipient. Before an eligible Federal payment is disbursed to a payee, FMS compares the payment information with debtor information in FMS' delinquent debtor database. If the payee's name and TIN match the name and TIN of a debtor, the disbursing official offsets the payment, in whole or in part, to satisfy the debt, to the extent legally allowed.

FMS transmits amounts collected through offset to the appropriate

creditor agencies after deducting fees, which FMS charges the creditor agencies in order to cover the cost of operating the offset program. The authority to charge fees is found at 31 U.S.C. 3716(c)(4) and 3720A(d). If not otherwise prohibited by law, creditor agencies may add the fees to the debts as administrative costs, pursuant to 31 U.S.C. 3717(e).

FMS maintains information about a delinquent debt in TOP delinquent debtor database and continues to offset eligible Federal payments until the creditor agency suspends or terminates debt collection or offset activity for the debt. A creditor agency will suspend collection if the debt is subject to a bankruptcy stay or if other reasons justify suspension. *See* 31 CFR 903.2. A creditor agency will terminate collection of a debt if it is paid in full, compromised, discharged, or if other reasons justify termination. *See* 31 CFR 903.3.

FMS has published rules that govern the offset of specific payment types to collect delinquent, nontax debts owed to the United States. These rules address: (1) Offset of tax refund payments to collect delinquent, nontax debts owed to Federal agencies (31 CFR 285.2); (2) offset of Federal benefit payments to collect delinquent, nontax debts owed to Federal agencies (31 CFR 285.4); and (3) offset of Federal salary payments to collect debts owed to Federal agencies (31 CFR 285.7). Nothing in this rule is intended to contradict any provision of these more specific sections. Rather, this rule only describes requirements and procedures which are common to the centralized offset of all Federal payments to collect debts owed to Federal agencies. To the extent any provision of this rule is inconsistent with a more specific provision of sections 285.2, 285.4 or 285.7 of this Part, the more specific provision shall apply.

### Section Analysis

#### (a) Scope

Paragraph (a) describes the scope of this section, which governs the centralized offset of Federal payments to collect delinquent, nontax debts owed to Federal agencies in accordance with the requirements of 31 U.S.C. 3716(c)(6), 3720A(a), 26 U.S.C. 6402, and all applicable regulations.

This regulation only applies to the extent that it does not conflict with the more specific provisions of the rules for tax refund offsets (*see* 31 CFR 285.2), salary payment offsets (*see* 31 CFR 285.7) and benefit payment offsets (*see* 31 CFR 285.4).

This section does not apply to administrative offsets that occur outside of TOP (known as "non-centralized offsets"). Non-centralized offsets are governed by the Federal Claims Collection Standards (see 31 CFR 901.3(c)) and agency-specific regulations.

This section does not apply to the offset of payments to collect debts owed to States (see 31 CFR 285.8) or to collect delinquent child support payments (see 31 CFR 285.1 and 285.3).

This section does not apply to garnishments or Internal Revenue Service levies of Federal payments. Offsets are not garnishments. An offset occurs when the Federal government withholds money owed to a person to satisfy a claim owed by that same person to the government. Garnishment is a process whereby a creditor attaches wages or other property belonging to a debtor which is in the possession of a third party. A levy is the means by which the Internal Revenue Service or other tax collecting authority seizes the delinquent taxpayer's property. See 26 U.S.C. 6331. Regulations governing garnishments and levies do not apply to offsets under this section. For example, regulations which exclude travel reimbursements from court-ordered, commercial garnishments on Federal pay (see 5 CFR 582.102) do not preclude offsets under this section. Therefore, payments which reimburse Federal employees for travel or other employment-related expenditures are subject to offset under this section, regardless of whether they may be garnished to collect debts owed to third parties.

This section applies only to payments that a payment certifying agency has certified to a disbursing official for disbursement. It therefore does not apply to payments made directly with a government credit card.

Lastly, the receipt of collections pursuant to this section does not preclude a Federal agency from pursuing all other available debt collection remedies simultaneously, provided that collections do not exceed the amount of the debt, including any interest, penalties, and administrative costs.

### (b) Definitions

Paragraph (b) of this section sets forth definitions applicable to this rule. It is important to note that the terms used in this section are defined for purposes of this section only. For example, whether a debt is "legally enforceable" for purposes of centralized offset pursuant to this section has no bearing on whether the debt is legally enforceable

for purposes of placing a lien on the debtor's property or for some other debt collection purpose.

### (c) General Rule

Paragraph (c) of this section sets forth the general rule that creditor agencies must submit their delinquent debts to FMS for offset, and that disbursing officials must offset payments to collect those debts. See 31 U.S.C. 3716(c).

### (d) Requirements for Creditor Agencies

Paragraph (d) sets forth the requirements for Federal creditor agencies with regard to centralized offset. As noted above, creditor agencies will meet the requirement to submit debts to Treasury for purposes of tax refund offset by submitting debts to FMS pursuant to this section. See 31 U.S.C. 3720A(a). The requirements of this section take into account the provisions of various statutes and regulations which apply to the offset of Federal payments in general, as well as to specific types of Federal payments.

Paragraph (d)(1) restates the statutory requirement that creditor agencies notify FMS of all past-due, legally enforceable, nontax debt which is delinquent for more than 180 days, for purposes of collection by centralized offset. See 31 U.S.C. 3716(c)(6). Paragraph (d)(1) also provides a creditor agency with 30 days following a decision on an appeal within which to submit a debt that is more than 180 days delinquent. This rule allows for an additional 30 days, because immediate transfer of a debt to FMS following a decision on an appeal might be impractical. The 30-day period provides debtors with an opportunity to pay the debt or to enter into a repayment plan with the creditor agency before offset action is taken. When a creditor agency determines that a debtor is unlikely to pay the debt or enter into a repayment plan within the 30-day period, it should submit the debt to FMS immediately following a decision on an appeal.

Paragraph (d)(2) provides that creditor agencies may notify FMS of debts delinquent for less than 180 days for purposes of offset. FMS encourages agencies to submit debts to TOP as soon as they become eligible, in order to maximize collections.

Paragraph (d)(3) describes the requirements for a debt to be eligible for centralized offset. For a creditor agency to submit a debt to FMS for offset, the debt must be past due and legally enforceable in the amount stated by the creditor agency, be less than 10 years delinquent (unless the debt may be collected by offset legally if more than ten years delinquent, as is the case with

judgment debts and education loans), have a balance greater than $25, and not be secured by collateral subject to foreclosure. Generally, the debt should not be secured by collateral subject to a pending foreclosure action unless the creditor agency certifies that offset will not affect the government's rights to the secured collateral. Additionally, the creditor agency must certify that the debt is eligible for collection by offset, as required in paragraph (d)(6) of this section.

Debts owed by foreign sovereigns are excluded from the mandatory requirement under paragraph (d)(1) that creditor agencies notify FMS of all past-due, legally enforceable, nontax debt which is delinquent for more than 180 days, for purposes of collection by centralized offset. This exclusion applies only to debts owed by foreign sovereigns and does not apply to debts owed by privately owned foreign corporations or by foreign individuals. This exclusion does not preclude a creditor agency from voluntarily notifying Treasury of debt owed by foreign sovereigns for the purpose of offset to the extent allowed by law. FMS has excluded debts owed by foreign sovereigns from the requirement described in paragraph (d)(1) pursuant to 31 U.S.C. 3716(c)(5). Section 3716(c)(5) authorizes the Secretary of the Treasury to prescribe such rules, regulations, and procedures as the Secretary considers necessary to carry out centralized offset under section 3716(c). The Secretary deems it necessary to exclude debts owed by foreign sovereigns because mandatory notification of such debts to Treasury for collection by offset could interfere with important foreign policy goals.

Paragraph (d)(3)(iv) describes creditor agencies' responsibilities to report certain debt information to Treasury on a report known as Treasury Report on Receivables (TROR). When reporting amounts eligible for TOP, agencies must report amounts that have been excluded from TOP and state the reasons for the exclusions consistent with this paragraph. Detailed instructions on completing the TROR can be found at http://www.fms.treas.gov/debt/dmrpts.

For purposes of this section, a debt is generally deemed past due or delinquent if it is not paid when due, whether that be the date specified in an initial notice or a date specified in a contract or other applicable agreement. Creditor agencies determine when a debt is delinquent based on applicable statutes, regulations and policies. Nothing in this section is intended to define when a debt is delinquent or legally enforceable for purposes of

**78938**    Federal Register / Vol. 67, No. 248 / Thursday, December 26, 2002 / Rules and Regulations

anything other than when a debt may be submitted to FMS for purposes of centralized offset. A debt is legally enforceable if there has been a final agency determination that the debt is due in the amount stated, and there are no legal bars to collection by offset. A debt is legally enforceable for purposes of this section as long as the 10-year limitation (or other applicable time limitation on offset) has not been exceeded, regardless of any limitation on when a claim may be brought in a civil action. Creditor agencies should consult with their agency counsel to determine the legal enforceability of debts for purposes of this section.

Paragraph (d)(4) describes the requirements for creditor agencies to publish regulations regarding offset. Creditor agencies must promulgate regulations governing offset in accordance with 31 U.S.C. 3716(b)(administrative offset), 3720A(a)(tax refund offset), and 31 CFR 901.3(b)(4)(Federal Claims Collection Standards) prior to submitting debts for offset. Additionally, creditor agencies must promulgate regulations in accordance with 5 U.S.C. 5514, 31 CFR 285.7(d)(2), and 5 CFR 550.1104 in order to collect debts through the centralized offset of Federal salary payments. Creditor agencies must comply with the prerequisites for the offset of all types of Federal payments in order to participate fully in the centralized offset through TOP. If, for example, a creditor agency has not published regulations concerning the offset of Federal salary payments, then disbursing officials cannot offset salary payments to collect that creditor agency's debts.

Paragraph (d)(5) sets forth the information required for each delinquent debt submitted to FMS for offset. All of the information is necessary for the successful operation of TOP.

Paragraph (d)(6) describes the certification that creditor agencies must provide to FMS for each debt. Creditor agencies must certify to FMS the requirements of 31 U.S.C. 3716(a), 3720A, 26 U.S.C. 6402, and applicable agency-specific statutes and regulations related to offset have been met. The creditor agency must certify the following for each debt: (1) the debt meets the requirements set forth in paragraph (d)(3) of this section, regarding debt eligibility; (2) the creditor agency has given the debtor due process pursuant to 31 U.S.C. 3716, 3720A and 26 U.S.C. 6402; and (3) the creditor agency has complied with 31 U.S.C. 3717 with respect to the assessment of interest, penalties and

administrative costs. The certification must be executed by the head of the agency or by a person with delegated authority to make such certification on behalf of the head of the agency.

With respect to the certification that the creditor agency has provided due process, neither the DCIA nor this rule changes the existing requirement that agencies provide due process prior to offset. Such due process requirements are set forth in 31 U.S.C. 3716(a), 3720A, and any agency-specific statutes and regulations applicable to the debt. Creditor agencies must inform debtors by written notice that the creditor agencies intend to offset eligible payments and that the debtor has an opportunity to review applicable agency records and to seek a review of the determination of the debt. In accordance with the creditor agency's policies and procedures, the debtor may provide evidence to the creditor agency that collection of the debt by administrative offset would result in a financial hardship. The debtor may also make alternative payment arrangements, which are acceptable to the creditor agency. There is an additional due process requirement when the creditor agency has submitted the debt for offset of the debtor's Federal salary. Prior to offsetting a Federal salary, the creditor agency must notify the debtor that she or he has an opportunity for a hearing pursuant to 5 U.S.C. 5514, 5 CFR 550.1104, and applicable creditor agency regulations. Such notification may be combined with any other due process notices or may be sent separately.

As noted in paragraph (d)(13), nothing in this section requires agencies to duplicate any notice, review or hearing previously provided to the debtor. For example, if the agency has provided the debtor with a hearing concerning the existence of a debt, this section does not require an agency to provide a second hearing concerning the same issue in order to submit the debt for offset. In such circumstance, however, the debtor may be entitled to a review (or hearing, if a Federal employee and the agency seeks to offset his or her Federal salary) concerning any other issues not addressed in the previous hearing. In this example, the debtor may contest the accuracy of the current debt balance (i.e., whether the agency had properly credited payments made subsequent to the hearing).

Paragraph (d)(7) explains that creditor agencies will be asked to update the certifications of debts maintained by FMS in order to ensure that the debts continue to meet the requirements of paragraph (d)(6), including that the

creditor agency has properly applied credits to the debt balance (other than collections through centralized offset). Periodic updates are required to ensure that information about the debts is current and accurate.

Paragraph (d)(8) also explains that the certification required by paragraphs (d)(6) and (d)(7) of this section, and any other information regarding delinquent debts transmitted to FMS, will be made in a form and manner as prescribed by FMS. The form may include, but is not limited to, electronic data transmission. In order to submit certifications electronically, a creditor agency must sign an agreement with FMS agreeing that the creditor agency will certify debts in accordance with instructions from FMS, that any person who the creditor agency allows to certify debts electronically will have the delegated authority to certify the debts on behalf of the head of the agency, and that such person knows that they are certifying to all of the requirements of paragraph (d)(6) of this section and any other terms of the certification as set forth in the agreement. FMS will require any agreement regarding electronic certification to be re-executed periodically, usually on an annual basis. This periodic execution will ensure that creditor agency personnel remain aware of their responsibilities and authorities when certifying debts for centralized offset.

Paragraph (d)(9) explains that agencies which designate disbursing officials pursuant to 31 U.S.C. 3321(c) are not required to certify debts arising out of their own operations for purposes of centralized offset under this section prior to collecting such claims by offset. For example, if the Department of Defense (DOD) is about to disburse a payment to a person who also owes a delinquent debt to it, DOD may offset such payment, in accordance with applicable law, without first certifying the debt to FMS for purposes of centralized offset.

Paragraph (d)(10) describes the creditor agencies' responsibility to correct and update information contained in delinquent debt records. While information about a debt is maintained in TOP's delinquent debtor database, the creditor agency remains responsible for administering the debt. This means that the creditor agency remains responsible for answering inquiries about the debts, negotiating agreements with the debtor, maintaining records applicable to the debt, and applying any amounts received with respect to the debt other than amounts collected through centralized offset. Creditor agencies make all decisions

concerning their debts. Creditor agencies determine whether debts are eligible for offset and whether offset funds should be returned to debtors who claim that the debts were not eligible for offset.

If creditor agencies receive funds from any source other than centralized offset, they must submit the updated balance information to FMS; however, FMS will apply any funds received through centralized offset to the debt balances within TOP and notify creditor agencies of such collections.

Creditor agencies are also responsible for notifying FMS immediately if there is a change in the status of the legal enforceability of any debt. For example, if a creditor agency learns that a debtor has filed for bankruptcy protection and the automatic stay is in effect, that creditor agency must notify FMS, in the manner prescribed by FMS, that the debt is no longer legally enforceable. Likewise, if the bankruptcy is dismissed, the debt has not been discharged, and there are no other legal obstacles to collection, the creditor agency should notify FMS immediately that the debt is once again legally enforceable. As a practical matter, this means that creditor agencies must have procedures in place to track the status of their debts which are in bankruptcy and to update FMS promptly. Creditor agencies should seek legal advice from their agency counsel concerning the impact of the Bankruptcy Code, particularly 11 U.S.C. 106, 362, and 553, on pending, contemplated or completed collections by offset.

If a debt is being collected and serviced by FMS or another debt collection center, pursuant to 31 U.S.C. 3711(g), FMS, or the applicable debt collection center, will manage the creditor agency's responsibilities under paragraph (d)(10) of this section.

Paragraph (d)(11) addresses debts which have been transferred to FMS or a Treasury-designated debt collection center for purposes of collection pursuant to 31 U.S.C. 3711(g) (known as "cross-servicing") or which have been referred to the Department of Justice (DOJ) for enforced collection. A debt collection center will also be responsible for submitting debts it is servicing to TOP on behalf of the creditor agencies. FMS, on behalf of the creditor agencies, will submit debts in its cross-servicing program to TOP in accordance with the requirements of this section. See 31 CFR 285.11 for certification requirements when transferring debts to FMS for debt collection purposes. DOJ will submit debts to FMS for centralized offset on behalf of the creditor agency, as DOJ

deems appropriate, for all debts which have been referred to DOJ for collection enforcement.

Paragraph (d)(12) explains that if a creditor agency has determined that the offset amount allowed by law would result in financial hardship to the debtor, and that a lesser offset amount is reasonable and appropriate based upon the debtor's financial circumstances, then the creditor agency may specify that the disbursing official offset a lesser amount.

*(e) Payments Made By the United States*

Paragraph (e) discusses the rules applicable to Federal payments covered by this section. This section generally applies to all Federal payments (regardless of the payment mechanism used, *e.g.*, check or electronic funds transfer), unless offset against such type of payment is expressly prohibited under the DCIA or other Federal statute. See 31 U.S.C. 3716(e)(2).

Paragraph (e)(1) notes that judgments paid pursuant to 31 U.S.C. 1304 (judgments, awards and compromise settlements) are eligible for centralized offset pursuant to 31 U.S.C. 3716(c). Nothing in this rule affects the setoff of amounts to be paid pursuant to such a judgment in accordance with 31 U.S.C. 3728 (Setoff against judgments), which authorizes the Secretary of the Treasury to withhold amounts to be paid on a judgment to offset a debt. Setoff under section 3728 occurs before the Secretary certifies the payment for disbursement. This rule, however, only addresses centralized offset of such payments after the Secretary has certified them for disbursement. See volume I, part 6, chapter 3100 of the Treasury Financial Manual for information on the setoff and certification of judgment fund payments.

Paragraph (e)(2) provides a list of payment types that are excluded from offset. In addition to payments exempt by law, this rule exempts from offset all Federal loan payments other than payments for travel advances pursuant to 31 U.S.C. 3716(c)(5). Section 3716(c)(5) authorizes the Secretary of the Treasury to prescribe such rules, regulations, and procedures as the Secretary considers necessary to carry out centralized offset under section 3716(c). The Secretary deems it necessary to exempt Federal loan payments other than travel advances from centralized offset. If a loan payment is offset, the debtor/payee pays off one agency by creating a debt owed to another agency. The government's interests in debt collection through offset are not advanced by paying off a debt owed to one agency by creating a

debt owed to another. Therefore, pursuant to 31 U.S.C. 3716(c)(5), the Secretary exempts Federal loan payments other than travel advances from centralized offset.

Although travel advance payments to Federal employees are considered loans, except in limited circumstances (*see* 54 Comp. Gen. 190, 191 (B–180672, September 5, 1974) and 1994 WL 158116 (B–251865, April 28, 1994)), the Secretary does not deem it necessary to exempt travel advances from centralized offset under this section for three reasons. First and foremost, Federal employees are ethically obligated to "satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law." See 5 CFR 2635.101(b)(12). If the Federal employee is unable to pay a debt, the employee should contact the creditor agency to make satisfactory repayment arrangements in order to avoid offsets of travel advances under this section. Absent such action by the Federal employee, any travel advances made to that employee should be offset to pay an employee's delinquent debts. The employee remains responsible for traveling, if required for the performance of his or her duties. Second, unlike traditional Federal loan programs, travel advances are short-term debts, which are repaid as soon as the employee travels. Third, delinquent debtors are barred from receiving Federal loans (*see* 31 U.S.C. 3720B), yet agencies generally do not access employees' credit reports or other sources of information to verify whether an employee owes a delinquent Federal debt prior to issuing a travel advance. Failing a bar by the agency issuing the travel advance, it is appropriate for the Government to offset the travel advance payment to satisfy the employee's delinquent debts.

Paragraph (e)(3) explains that specific rules apply to the centralized offset of tax refunds, certain benefit payments and Federal salary payments. See 31 CFR 285.2, 285.4, and 285.7, respectively. This section applies only to the extent that it is not inconsistent with the provisions of the rules that apply to each payment type.

Paragraph (e)(4) states that a payment made jointly to two or more persons (*i.e.*, "joint payees"), may be offset in its entirety to satisfy the debt of any one of the joint payees. FMS assumes that joint payments are made to persons who each own an undivided interest in the whole payment. A joint payee who believes that he or she is entitled to a portion of the monies that have been offset must

contact the payment agency which issued the payment. The payment agency must determine, based upon applicable laws and policies, if a refund of any portion of the offset amount is appropriate. If a couple files a joint Federal income tax return, and a resulting refund is offset to collect a debt which is owed by only one of the spouses, the spouse that does not owe the debt (*i.e.*, the "injured spouse") must contact the Internal Revenue Service to claim the portion of the tax refund to which he or she is entitled. The IRS Web site, found at *www.irs.gov,* contains instructions for the injured spouse to make a claim for his or her portion of the tax refund. At the time of writing, such claims are processed on IRS Form 8379.

Paragraph (e)(5) states that payments made to representative payees (*i.e.*, the named payee is receiving the payment solely in the person's capacity as a representative for the beneficiary of the payment) will only be offset to collect delinquent debt owed by the payment beneficiary. For example, if a payment is made to an attorney solely for the benefit of his or her client, FMS will offset such payment only to collect a debt owed by the client. FMS will not offset the payment to collect a debt owed by the named payee attorney. Payment agencies are responsible for properly identifying representative payees.

Paragraph (e)(6) addresses the offset of payments which have been assigned to a third party (known as "assigned payments"). In certain circumstances, FMS may offset an assigned payment to collect debts owed by either the assignor or the assignee. *See* 31 U.S.C. 3716(e)(2) (offset permissible if not prohibited). For example, if a Federal contractor has assigned the right to receive payment under a Federal contract to a financial institution, FMS may offset the payment to collect a debt owed by either the contractor or the financial institution. FMS will offset assigned payments made to Federal contractors within the limits of 41 U.S.C. 15, 31 U.S.C. 3727 and implementing regulations (including, as applicable, the Federal Acquisition Regulation (48 CFR Chapter 1)). This rule does not address the validity of any assignment of payments. At the time of the publication of this regulation, FMS has not yet fully implemented offset of assigned payments. FMS will provide guidance to payment agencies prior to implementation.

Paragraph (e)(7) describes how payment agencies may request that the Secretary exempt payment types from centralized offset and how the Secretary

will evaluate and respond to such requests. The DCIA requires the Secretary to exempt from centralized offset payments made under means-tested programs when the head of the payment agency requests such exemption in writing. The DCIA also authorizes the Secretary to exempt payments made under non-means-tested programs at the written request of the head of the payment agency. *See* 31 U.S.C. 3716(c)(3)(B). FMS has published and made available on its Web site (*www.fms.treas.gov/debt*) standards and procedures for the exemption of classes of payments from centralized offset. Paragraph (e)(7)(i) explains when an exemption request for means-tested payments will be granted. Paragraph (e)(7)(ii) explains that the Secretary may exempt non-means-tested payments in accordance with the published standards. Paragraph (e)(7)(iii) explains that the requests for exemptions must be made in writing following guidance issued by FMS pursuant to 31 U.S.C. 3716(c)(3)(B). Exemptions apply to classes of payments and not to individual payments. A list of payments exempt from offset may be found on the FMS Web site at *www.fms.treas.gov/debt.*

Consistent with the foregoing paragraph, contracting officials at Federal agencies do not have the authority to exempt contract payments from centralized offset. Payments are exempt from centralized offset only if expressly made exempt by statute or if the Secretary grants an exemption. Therefore, contract clauses prohibiting a Federal agency from offsetting a payment generally do not apply to centralized offset pursuant to this section, regardless of whether such clauses may be effective as to offsets made by the contracting agency pursuant to other authorities.

Paragraph (e)(8) explains that payment agencies must prepare and submit payment vouchers in the manner prescribed by FMS or other disbursing official, in order to maximize the number of legally-eligible offsets. Also, payment agencies are responsible for notifying the Secretary of any legal bars to offset of payments which the agency certifies for payment.

Paragraph (e)(9) explains that when a payment is offset, both the disbursing official and the payment agency have met their obligations with respect to making the payment. Neither the payment agency nor the disbursing official is liable for any portion of the payment which was offset. *See* 31 U.S.C. 3716(c)(2). For example, if an agency certifies a payment to a Federal contractor for work completed, and that

payment is offset to collect a delinquent debt that the contractor owes to another Federal agency, the contractor has been paid in full for its services. When the creditor agency credits the offset amount to the contractor's delinquent debt, the contractor has received full value for the services performed under the contract. Payment agencies should be careful not to issue an overpayment to a contractor who claims non-receipt of payment after the initial payment is offset to pay the contractor's debt. Contractors should contact the creditor agency to which the debt is owed for questions about the debt or to make repayment arrangements.

### *(f) Offset*

Paragraph (f) describes the offset process, including amounts to be offset and the priority of how offsets are applied when it is determined that a payee owes more than one delinquent debt. Generally, a payment will be offset by the lesser of the amount of the payment, or the amount of the delinquent debt, including associated interest, penalties, and administrative costs. The offset amount is limited for certain Federal payments. *See for example,* 31 CFR 285.4 and 285.7 for limitations on offsets of certain Federal benefit payments and Federal salaries. Creditor agencies may specify that a lesser amount be offset based on a written agreement between the creditor agency and the debtor, or based upon the creditor agency's determination that the amount allowed by law would create a financial hardship.

Paragraph (f)(2) establishes that a recurring Federal retirement annuity payment made by the Office of Personnel Management (OPM) will be offset up to a maximum of 25 percent to collect a delinquent debt under this section. For example, if an OPM annuity payment is $850.00, the amount offset would be no more than $212.50. Although the DCIA did not expressly provide for any such limitation on OPM recurring retirement annuity payments, limitations apply to other types of payments considered income. For example, the Consumer Credit Protection Act limits the amount of pay subject to garnishment by a private creditor to 25% under most circumstances. Limitations on other types of Federal payments, such as Federal salary and social security payments apply. Therefore, as authorized by 31 U.S.C. 3716(c)(5), the Secretary has determined that a limitation on the offsets of OPM retirement payments is necessary to carry out the centralized offset program. After balancing the Government's

interest in collecting large dollar debts within a reasonable time frame with the interest of the debtor/payee in receiving some retirement income, FMS has determined that a 25% limitation should be applied.

Paragraph (f)(3) describes the order in which deductions will be applied when more than one delinquent debt is submitted to FMS for the same payee. If the Internal Revenue Service has served a tax levy through TOP, amounts deducted will first be applied to such tax levy. Deductions for tax levies are not governed by this section, but have a higher legal priority. *See* 31 U.S.C. 3716(c)(6). Remaining amounts will be applied in the following order; first, to debts for past-due support assigned to a State pursuant to sections 402(a)(26) and 471(a)(17) of the Social Security Act; second, to debts owed to Federal agencies; third, to any qualifying past due support debts not assigned to a State; and fourth, to debts owed to States for obligations other than past-due support.

Paragraph (f)(3) also explains what happens when a recurring payment is being offset to collect a debt, and a debt with a higher legal priority is submitted to TOP. The debtor may not, in all such cases, receive an additional warning notice when the offsets are applied to the higher priority debt. *See* paragraph (g)(2) of this section. For example, FMS collects delinquent tax debts through TOP when the Internal Revenue Service serves a levy. Levies to collect delinquent tax debts have a higher legal priority than offsets to collect nontax debts. *See* 31 U.S.C. 3716(c)(6). If a recurring payment is being offset under this section to collect a nontax debt when the Internal Revenue Service serves a levy to collect a tax debt, offsets may be interrupted until the tax levy is satisfied or released. In this case, immediately upon satisfaction of the tax debt, FMS may resume offsetting the payment to collect the Federal nontax debt without further warning notice to the debtor. As with all offsets, the disbursing official (or FMS, on behalf of the disbursing official) will send an offset notice (*see* paragraph (g)(3)) at the time of the offset.

*(g) Notices*

Paragraph (g) describes the two types of notices that disbursing officials will provide to the debtor/payee—warning notices and offset notices. Where the payment offset is a recurring payment, the disbursing official (or FMS, on behalf of the disbursing official) will send a warning notice prior to the first offset. The warning notice will state when the offsets will begin and the

anticipated amount of the offset. When the offset will begin may be stated as a certain number of days or number of payments from the date of the warning notice. If appropriate, the anticipated amount of the offset may be stated as a percentage of the payment. Recipients of recurring payments also will receive offset notices at the time the disbursing official offsets the payments. Where the payment offset represents a one-time payment or non-recurring payment, the disbursing official will not send a warning notice. The disbursing official (or FMS on behalf of the disbursing official) will send an offset notice at the time the offset occurs. Offset notices identify the payment, the amount offset, the creditor agency that requested the offset, and the name of a contact within the creditor agency. Pursuant to 31 U.S.C. 3716(c)(7)(B), the failure of the debtor to receive an offset notice shall not impair the legality of the offset.

*(h) Notification to Creditor and Payment Agencies*

Paragraph (h) explains the information that creditor and payment agencies will receive when an offset occurs.

*(i) Disposition of Amounts Collected*

Paragraph 285.5(i) describes the process for disposition of amounts collected by means of offset. After offsetting a payment, FMS will normally deduct any fees charged in accordance with paragraph 285.5(j) before transmitting the remaining amount to the appropriate creditor agency. Alternatively, FMS may bill the creditor agency.

If FMS learns that an offset has been taken erroneously, FMS will notify the creditor agency of the erroneous offset, and will collect the amount paid under the erroneous offset by deducting the amount from future amounts payable to the creditor agency. An erroneous offset occurs when the payee was not entitled to the payment or there was another error in the payment or offset process. Erroneous offsets do not include offsets which occurred because the creditor agency should not have certified the debt. If a debt should not have been certified for offset, the creditor agency will resolve the matter directly with the debtor. Generally, a disbursing official is not responsible for refunding money to debtors if a debt should not have been collected by offset.

*(j) Fees*

Paragraph (j) describes the fee that FMS will charge for its services under this section. The fee may include administrative fees charged by salary

paying agencies that match their salary payments with debts in the TOP database and conduct the offset of, or calculate the correct amount to be offset from, Federal salary payments on behalf of disbursing officials. Under 31 U.S.C. 3716(c)(4), FMS' fee may cover the full cost of implementing centralized offset, including certain costs incurred by non-Treasury disbursing officials performing offsets. In accordance with 31 U.S.C. 3711(g)(7), FMS may reimburse non-Treasury disbursing officials for certain expenses associated with governmentwide debt collection unless otherwise prohibited by law.

*(k) Waiver of Certain Provisions Under the Computer Matching Privacy and Protection Act of 1988*

The DCIA includes provisions intended to simplify the matching process involving delinquent debtor records certified by creditor agencies and payment records certified by payment agencies for purposes of offsetting payments other than tax refunds. In particular, where a creditor agency certifies that the due process requirements of 31 U.S.C. 3716(a) have been met, the DCIA authorizes the Secretary to waive provisions of the Computer Matching and Privacy Protection Act of 1988 (CMPPA), Pub. L. No. 100–503, as amended, that require matching agreements, as well as post match notice and verification of the results of individual matches. *See* 5 U.S.C. 552a(o) and (p). Once a waiver has been granted by the Secretary, the DCIA also simplifies the CMPPA review and reporting requirements codified at 5 U.S.C. 552a(u) by placing all such responsibility with the data integrity board of the Department of the Treasury. Paragraph (k) of this section provides notice that this waiver authority has been delegated to FMS, and clarifies that FMS has granted a general waiver for all agencies that certify to FMS that the requirements of paragraph (d)(6) of this section have been met. A waiver is not required for matching debts for purposes of tax refund offset. *See* 5 U.S.C. 552a(a)(8)(B).

**Special Analysis**

FMS is promulgating this interim rule without opportunity for prior public comment pursuant to the Administrative Procedure Act, 5 U.S.C. 553 (the "APA"), because FMS has determined that a comment period would be unnecessary, impracticable, and contrary to the public interest. Because no notice of proposed rulemaking is required, the provisions of the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*) do not apply.

The public is invited to submit comments on the interim rule which will be taken into account before a final rule is issued.

FMS has determined that good cause exists to make this interim rule effective upon publication without providing the 30-day period between publication and the effective date contemplated by 5 U.S.C. 553(d). The purpose of a delayed effective date is to afford persons affected by a rule a reasonable time to prepare for compliance. However, in this case, as required by the DCIA, agencies already participate in TOP. Inasmuch as this interim rule provides important guidance that is expected to facilitate implementation of the authority contained in the law, FMS believes that good cause exists to make the rule effective upon publication.

**Regulatory Analysis**

This interim rule is not a significant regulatory action as defined in Executive Order 12866. It is hereby certified that this rule will not have a significant impact on a substantial number of small entities. Therefore a regulatory flexibility analysis is not required. This regulation will not impose significant costs on small businesses, because this regulation only impacts small businesses who receive payments from Federal agencies and who are delinquent on debts owed to the Federal government.

**List of Subjects in 31 CFR Part 285**

Administrative practice and procedure, Black lung benefits, Child Support, Claims, Credit, Debts, Disability benefits, Federal employees, Garnishment of wages, Hearing and appeal procedures, Loan programs, Privacy, Railroad retirement, Railroad unemployment insurance, Salaries, Social Security benefits, Supplemental Security Income (SSI), Taxes, Veteran's benefits, Wages.

**Authority and Issuance**

For the reasons set forth in the preamble, 31 CFR part 285 is amended as follows:

## PART 285—DEBT COLLECTION AUTHORITIES UNDER THE DEBT COLLECTION IMPROVEMENT ACT OF 1996

1. The authority citation for part 285 continues to read as follows:

**Authority:** 5 U.S.C. 5514; 26 U.S.C. 6402; 31 U.S.C. 321, 3701, 3711, 3716, 3719, 3720A, 3720D; E.O. 13019; 3 CFR, 1996 Comp., p. 216.

2. Section 285.5 is added to Part 285, Subpart A, to read as follows:

**§ 285.5   Offset of Federal payments to collect nontax debt owed to the United States.**

(a) *Scope.* (1) This section governs the centralized offset of Federal payments to collect delinquent, nontax debts owed to Federal agencies in accordance with 31 U.S.C. 3716, 3720A and 26 U.S.C. 6402 and applicable regulations. The Department of the Treasury's Financial Management Service (FMS) administers centralized offset through the Treasury Offset Program. Offset occurs when the Federal government withholds part or all of a debtor's Federal payment to satisfy the debtor's delinquent debt owed to the government.

(2) Special rules apply to the collection of delinquent, nontax debts through the centralized offset of certain types of Federal payments, including tax refunds (31 CFR 285.2), Federal benefit payments (31 CFR 285.4), and Federal salary payments (31 CFR 285.7). While this rule applies to such payments, nothing in this rule is intended to contradict any provision of those more specific sections. To the extent any provision of this rule is inconsistent with a more specific provision of §§ 285.2, 285.4 or 285.7 of this part, the more specific provision shall apply.

(3) The receipt of collections pursuant to this section does not preclude a Federal agency from pursuing other debt collection remedies in conjunction with centralized offset. Nothing in this section precludes an agency from pursuing all available debt collection remedies simultaneously, provided that collections do not exceed the amount of the debt, including any interest, penalties, and administrative costs.

(b) *Definitions.* As used in this section:

*Agency* or *Federal agency* means a department, agency or subagency, court, court administrative office, or instrumentality in the executive, judicial, or legislative branch of the Federal Government, including government corporations.

*Centralized offset* means the offset of Federal payments through the Treasury Offset Program to collect debts which creditor agencies have certified pursuant to 31 U.S.C. 3716(c), 3720A(a) and applicable regulations. The term "centralized offset" includes the Treasury Offset Program's processing of offsets of Federal payments disbursed by disbursing officials other than FMS.

*Creditor agency* has the same meaning as found at 31 U.S.C. 3701(e)(1) and means any Federal agency that is owed a claim or debt that seeks to collect that claim or debt through offset of Federal payments.

*Debt* or *claim* has the meaning contained in 31 U.S.C. 3701(b) and means any amount of money, funds, or property that has been determined by an appropriate official of the Federal government to be owed to the United States by a person, organization, or entity, except another Federal agency. The terms "debt" and "claim" are synonymous and include debt administered by a third party acting as an agent for the Federal Government. For purposes of this section, the term "debt" does not include debts arising under the Internal Revenue Code of 1986 (26 U.S.C. 1 *et seq.*), the tariff laws of the United States, or the Social Security Act (42 U.S.C. 301 *et seq.*), except to the extent provided in sections 204(f) and 1631(b)(4) of such Act (42 U.S.C. 404(f) and 1383(b)(4)(A), respectively) and 31 U.S.C. 3716(c).

*Debt collection center* means a Federal agency or a unit or subagency within a Federal agency that has been designated by the Secretary to collect debt owed to the United States.

*Debtor* means a person who owes a debt to the United States.

*Delinquent* or *past-due* refers to the status of a debt and means a debt has not been paid by the date specified in the agency's initial written demand for payment, or applicable agreement or instrument (including a post-delinquency payment agreement), unless other payment arrangements satisfactory to the creditor agency have been made. Nothing in this section is intended to define whether a debt is delinquent or past-due for purposes other than offset under this section.

*Delinquent debt record* means information about a past-due, legally enforceable debt submitted by a creditor agency to FMS for purposes of offset in accordance with the provisions of this section. Information about a past-due, legally enforceable debt includes, but is not limited to, the amount of the debt and the debtor's name, address, and taxpayer identifying number.

*Disbursing official* means an official who has authority to disburse public money pursuant to 31 U.S.C. 3321 or another law, including an official of the Department of the Treasury, the Department of Defense, the United States Postal Service, or any other government corporation, or any official of the United States designated by the Secretary of the Treasury to disburse public money.

*FMS* means the Financial Management Service, a bureau of the Department of the Treasury and its disbursing office. FMS is responsible for administering centralized offset.

*Legally enforceable* refers to a characteristic of a debt and means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection by offset. Debts that are not legally enforceable for purposes of this section include, but are not limited to, debts subject to the automatic stay in bankruptcy proceedings or debts covered by a statute that prohibits collection of such debt by offset. For example, if a delinquent debt is the subject of a pending administrative review process required by statute or regulation, and if collection action during the review process is prohibited, the debt is not considered legally enforceable for purposes of this section. Nothing in this section is intended to define whether a debt is legally enforceable for purposes other than offset under this section.

*Match* means the taxpayer identifying number and name (or derivative thereof) of the payee on a payment record are the same as the taxpayer identifying number and name of the debtor on a delinquent debt record.

*Offset* means withholding funds payable by the United States to, or held by the United States for, a person to satisfy a debt owed by the payee.

*Past-due* has the same meaning as "delinquent", as defined above.

*Payee* means a person who is due a payment from a disbursing official as certified by the payment agency. For purposes of this section, a "payee" is a person who is entitled to the benefit of all or part of a payment from a disbursing official.

*Payment agency* means any agency that transmits payment requests, in the form of certified payment vouchers or other similar forms, to a disbursing official for disbursement.

*Payment record* means information contained on a payment request, in the form of a certified payment voucher or other similar form, that has been transmitted to a disbursing official for disbursement in accordance with the provisions of 31 U.S.C. 3325 and 3528 or other applicable law. For purposes of matching, "payment record" may include information extracted from a payment request. Such information could include, but is not limited to, the amount and type of payment and the payee's name, address, and taxpayer identifying number.

*Person* means an individual, corporation, partnership, association, organization, State or local government, or any other type of entity other than a Federal agency.

*Recurring payment* means a payment to an individual that is expected to be payable to a payee at regular intervals, at least four times annually. The term "recurring payment" does not include payments made pursuant to a Federal contract, grant or cooperative agreement.

*Representative payee* means a person named as payee on the payment voucher certified by the payment agency who is acting on behalf of a person entitled to receive the benefit of all or part of the payment.

*Secretary* means the Secretary of the Treasury.

*Taxpayer identifying number* means the identifying number described under section 6109 of the Internal Revenue Code of 1986 (26 U.S.C. 6109). For an individual, the taxpayer identifying number is generally the individual's social security number.

(c) *General rule.* (1) Creditor agencies shall submit delinquent debts to FMS for purposes of offset in accordance with paragraph (d) of this section.

(2) Disbursing officials shall compare payment records with delinquent debt records submitted to FMS for collection by offset. When a match occurs, and all other requirements for offset have been met, the disbursing official shall offset the payment to satisfy, in whole or part, the payee's debt to the extent allowed by law. The disbursing official shall pay any amounts not offset to the payee. *See* paragraphs (e), (f), (g), and (h) of this section.

(d) *Requirements for creditor agencies*—(1) *Mandatory notification of delinquent debts.* As required by 31 U.S.C. 3716(c)(6), and in accordance with the provisions of this section, a creditor agency shall notify FMS of all legally enforceable debts over 180 days delinquent that are owed to the creditor agency. By complying with this requirement, creditor agencies will satisfy the requirement of 31 U.S.C. 3720A(a) to notify the Secretary of past due, legally enforceable debt for purposes of tax refund offset. If a debt which is over 180 days delinquent is considered not legally enforceable solely because it is under review as described in paragraph (d)(6)(ii)(C) of this section, the agency must submit the debt to FMS for collection by offset within 30 days of completing the review.

(2) *Discretionary notification of delinquent debts.* Creditor agencies may notify FMS of any debt that is less than 180 days delinquent, so long as the requirements of paragraph (d)(3) of this section are met.

(3) *Debt eligibility.* (i) A debt submitted to FMS for collection by centralized offset must be:

(A) Past-due in the amount stated by the creditor agency;

(B) Legally enforceable;

(C) Less than 10 years delinquent, unless the debt legally may be offset if more than 10 years delinquent;

(D) More than $25, or such other amount as FMS may prescribe; and

(E) Not secured by collateral subject to a pending foreclosure action, unless the creditor agency certifies that offset will not affect the Government's rights to the secured collateral.

(ii) The creditor agency must certify that the debt is eligible for collection by offset, as required in paragraph (d)(6) of this section.

(iii) Debts owed by foreign sovereigns may be referred to Treasury Offset Program at the discretion of the creditor agency to the extent allowed by law, but are excluded from mandatory referral under paragraph (d)(1) of this section.

(iv) In accordance with 31 U.S.C. 3719 and the procedures promulgated thereunder, creditor agencies must report to Treasury the amount of debt over 180 days delinquent eligible for the Treasury Offset Program. The procedures require that such report include the amount of debt over 180 days delinquent that the creditor agency has determined is not eligible for the Treasury Offset Program and the reasons for such determination.

(4) *Creditor agency regulations.* Prior to submitting a debt to FMS for purposes of offset, Federal agencies shall prescribe regulations in accordance with the requirements of 31 U.S.C. 3716(b), 31 CFR 901.3(b)(4), 31 U.S.C. 3720A(a), and 31 CFR 285.2(c). Before submitting debts to FMS for purposes of offsetting Federal salary payments, creditor agencies must also publish regulations pursuant to 5 U.S.C. 5514, 31 CFR 285.7(d)(2), and 5 CFR 550.1104.

(5) *Delinquent debt information requirements.* For each debt submitted to FMS for offset, the creditor agency shall provide the following information:

(i) Name and taxpayer identifying number of the person who owes the debt;

(ii) Debtor's address last known to the creditor agency;

(iii) The amount of the debt (including, as applicable, interest, penalties and administrative costs) and the date on which the debt became delinquent;

(iv) The contact within the creditor agency who will handle questions, concerns or communications regarding the debt;

(v) Written certification as required in paragraph (d)(6) of this section; and

(vi) Other information as may be requested by FMS.

(6) *Creditor agency certification.* At the time the creditor agency notifies FMS of a debt for purposes of collection by offset, the creditor agency shall provide, in the manner required by FMS, written certification to FMS that:

(i) The debt meets the requirements described in paragraph (d)(3)(i) of this section;

(ii) In compliance with 31 U.S.C. 3716, 3720A, 26 U.S.C. 6402, and applicable regulations, the creditor agency has made a reasonable attempt to provide each debtor with:

(A) Written notification, at least sixty days prior to submitting the debt and at the debtor's most current address known to the agency, of the nature and the amount of the debt, the intention of the creditor agency to collect the debt through offset, and an explanation of the rights of the debtor;

(B) An opportunity to inspect and copy the records of the creditor agency with respect to the debt;

(C) An opportunity for a review within the creditor agency of the determination of indebtedness, including the opportunity to present evidence that all or part of the debt is not past-due or legally enforceable;

(D) An opportunity to enter into a written repayment agreement with the creditor agency; and

(E) In the case of Federal employees, an opportunity for a hearing prior to submitting the debt for Federal salary offset. *See* 5 U.S.C. 5514 and 5 CFR 550.1104. (*See* 31 CFR 285.7(d), which describes the authority to waive the salary offset certification as a prerequisite to referring the debt for other types of offsets.)

(iii) The creditor agency has complied with all statutes, regulations, and policies applicable to the creditor agency's assessment of interest, penalties and administrative costs (including, as applicable, 31 U.S.C. 3717), and that the creditor agency has provided a written notice to debtors explaining the creditor agency's requirements concerning any such charges assessed against those debtors;

(iv) The individual signing the certification has the delegated authority to execute the certification on behalf of the head of the creditor agency; and

(v) such additional information that FMS may from time to time require in compliance with law, regulation or policy.

(7) *Updating Certification.* After a debt has been submitted to FMS for purposes of collection by offset, the creditor agency shall provide, at least annually, in the manner required by FMS, written certification to FMS that:

(i) The debt continues to meet the requirements described in paragraph (d)(3) of this section; and

(ii) The creditor agency has properly credited all collections to the debt balance (other than collections received through centralized offset).

(8) *FMS instructions to creditor agencies.* Agencies will provide the certification in a form and manner prescribed by FMS. FMS will instruct agencies as to the form such written certifications will take and how certifications can be delivered to FMS, including, but not limited to, the use of electronic data transmission.

(9) *Agencies which are both creditor and disbursing officials.* A creditor agency that also designates disbursing officials pursuant to 31 U.S.C. 3321(c) is not required to certify debts arising out of its operations to FMS before such agency's disbursing officials offset to collect such claims. This paragraph (d)(9) does not apply to FMS when it submits debts which it is servicing pursuant to 31 U.S.C. 3711(g).

(10) *Correcting and updating debt information.* (i) When submitting debts for offset, the creditor agency must properly credit all collections, other than collections received from centralized offset.

(ii) The creditor agency shall update delinquent debt records, in the manner and time frames required by FMS, to reflect any amounts credited by the creditor agency to the debtor's account after submission of the debt to FMS (other than credits for amounts collected by centralized offset).

(iii) The creditor agency may update delinquent debt records to reflect any increases in the amount of the debt submitted to FMS for collection by offset provided that the creditor agency has complied with the requirements of paragraph (d)(6) of this section with regard to the increased amounts.

(iv) The creditor agency shall notify FMS immediately of any change in the status of the legal enforceability of the debt—for example, if the creditor agency receives notice that the debtor has filed for bankruptcy protection.

(v) The creditor agency shall notify FMS if it has returned any moneys to the debtor/payee because of an offset that should not have occurred, as described in paragraph (i)(2) of this section.

(11) *Debts at FMS, a debt collection center, or the Department of Justice.* If a creditor agency has transferred a debt to FMS or a Treasury-designated debt collection center pursuant to 31 U.S.C. 3711(g) and 31 CFR 285.12, or if a

creditor agency has referred a debt to the Department of Justice for enforced collection, then FMS, the debt collection center, or the Department of Justice, as the case may be, is responsible for submitting the debt information to FMS to satisfy the creditor agency's obligations under 31 U.S.C. 3716(c)(6) and this section.

(12) *Certification of amount to be offset if different than maximum allowed by law.* Generally, the amount of an offset will be calculated as set forth in paragraph (f)(2) of this section. If the creditor agency certifies to FMS that the creditor agency has determined the offset amount allowed by law would result in financial hardship to the debtor and that a lesser offset amount (specified either in dollar amount or as a percentage of the payment) is reasonable and appropriate based on the debtor's financial circumstances, then the disbursing official shall offset such lesser amount specified by the creditor agency.

(13) *Duplication of notices not required.* Nothing in this section requires any creditor agency to duplicate any notice or opportunity for hearing or review provided to the debtor prior to offset.

(e) *Payments made by the United States*—(1) *Payments eligible for offset.* Except as set forth in paragraph (e)(2) of this section, all Federal payments are eligible for offset under this section. Eligible Federal payments include, but are not limited to, Federal wage, salary, and retirement payments, vendor and expense reimbursement payments, certain benefit payments, travel advances and reimbursements, grants, fees, refunds, judgments (including those certified for payment pursuant to 31 U.S.C. 1304), tax refunds, and other payments made by Federal agencies.

(2) *Payments excluded from offset under this section.* This section does not apply to the following payments:

(i) Black Lung Part C benefit payments, or Railroad Retirement tier 2 payments;

(ii) Payments made under the tariff laws of the United States;

(iii) Veterans Affairs benefit payments to the extent such payments are exempt from offset pursuant to 38 U.S.C. 5301;

(iv) Payments made under any program administered by the Secretary of Education under title IV of the Higher Education Act of 1965 for which payments are certified by the Department of Education;

(v) Payments made under any other Federal law if offset is expressly prohibited by Federal statute;

(vi) Payments made under any program for which the Secretary has

granted an exemption in accordance with the provisions of 31 U.S.C. 3716(c)(3)(B) and paragraph (e)(7) of this section; and

(vii) Federal loan payments other than travel advances.

(3) *Specific rules for certain payment types.* (i) Specific rules apply with respect to the offset of the following types of payments:

(A) Social Security benefit payments (excluding Supplemental Security Income payments), Black Lung (part B) payments, and Railroad Retirement (other than tier 2) payments to the extent such payments are subject to offset under 31 U.S.C. 3716(c)(3)(A) (*see* 31 CFR 285.4);

(B) Federal salary payments (*see* 31 CFR 285.7; 5 CFR 550.1101 through 550.1108); and

(C) Tax refund payments (*see* 31 CFR 285.2).

(ii) This section governs the offset of such payments to the extent that this section is not inconsistent with the special rules that apply for a particular type of payment.

(4) *Payments made to joint payees.* If a payment is certified to more than one payee (*i.e.*, joint payees), the entire payment (including a tax refund payment) will be subject to offset for a debt of either payee, unless otherwise prohibited by law or regulation. *See* 31 CFR 285.2(g) regarding offset of joint tax refunds and claims to return offset funds to the non-debtor, joint payee.

(5) *Payments made to representative payees.* If a payment is made to a person solely in that person's capacity as a representative payee for another person having the beneficial interest in a payment, the disbursing official shall offset that payment only to collect debts owed by the person having the beneficial interest in the payment. Payment agencies are responsible for identifying representative payees.

(6) *Assigned payments.* (i) If a person, including a Federal contractor, assigns the right to receive a Federal payment to a third party (the "assignee"), the assigned payment will be subject to offset to collect a delinquent debt owed by the assignee.

(ii) An assigned payment will also be subject to offset to collect delinquent debts owed by the assignor unless:

(A) In accordance with 41 U.S.C. 15(e)–(f), the payment has been properly assigned to a financial institution pursuant to a Federal contract, the contract contains provisions prohibiting the payment from being reduced or offset for debts owed by the contractor, and the debt arose independently of the contract; or

(B) pursuant to 31 U.S.C. 3727, the payment is being made to the assignee as settlement or satisfaction of a claim brought by the assignee against the creditor agency based upon the contract, and the debt of the contractor arises independently of the contract; or

(C) the debtor has properly assigned the right to such payments and the debt arose after the effective date of the assignment.

(7) *Payment agency requests for exemptions from centralized offset pursuant to 31 U.S.C. 3716(c)(3)(B)—*(i) *Means-tested payments.* The Secretary will exempt from centralized offset payments made under means-tested programs when requested by the head of the agency making such payments. For purposes of this section "means-tested programs" are those which base eligibility on a determination that the income and/or assets of the beneficiary are inadequate to provide the beneficiary with an adequate standard of living without program assistance.

(ii) *Payments made under programs which are not means-tested.* Upon written request from the payment agency, the Secretary may exempt classes of payments which are not means-tested. Payment agencies may request that the Secretary exempt 100% of each payment in a payment class or that the Secretary exempt a specific lesser percentage. The Secretary will consider such requests under standards prescribed by the Secretary and published on the FMS Web site. *See www.fms.treas.gov/debt.*

(iii) *Procedures for requesting exemptions.* The head of the payment agency must make a request for exemption in writing. The request must comply with the procedures published by FMS and made available at its Web site. *See www.fms.treas.gov/debt.*

(iv) *Exemptions apply to classes of payments.* The Secretary will only exempt classes of payments. Requests for exemption of individual payments will not be considered.

(8) *Payment agency responsibilities.* (i) Payment agencies shall prepare and submit payment vouchers in the manner prescribed by the disbursing official to ensure that all payments legally eligible for offset will be offset and all payments not eligible will not be offset. Payment agencies shall notify the disbursing agency, in the manner prescribed by FMS, that a payment is a recurring payment.

(ii) Payment agencies shall also review the nature of payments the agency certifies and notify FMS of any legal bars to centralized offset of payments.

(9) *Payment and disbursing officials have satisfied the obligation underlying the payment.* When an offset occurs, the debtor has received payment in full for the underlying obligation represented by the payment. Pursuant to 31 U.S.C. 3716(c)(2)(A), neither the disbursing official nor the payment agency shall be liable for the amount of the offset on the basis that the underlying obligation was not satisfied. For example, if an agency certifies a payment to a Federal contractor for work completed or services provided, and that payment is offset to collect a delinquent debt that the contractor owes to another Federal agency, the contractor has been paid in full for its services. When the creditor agency credits the offset amount to the contractor's delinquent debt, the contractor has received full value for the services performed under the contract.

(f) *Offset*—(1) *When offset occurs.* When a match occurs and all other requirements for offset under 31 U.S.C. 3716(c), 3720A, and applicable regulations have been met, the disbursing official shall offset the payee's Federal payment to satisfy, in whole or part, the debt owed by the debtor. Offsets will continue until the debt, including any interest, penalties, and administrative costs, is paid in full or otherwise resolved to the satisfaction of the creditor agency.

(2) *Offset amount.* (i) Except as otherwise provided in 31 CFR 285.4(e) and 285.7(g) (addressing centralized offset of certain Federal benefit payments and salary payments, respectively), the disbursing official shall offset the lesser of:

(A) The amount of the payment as shown on the payment record; or

(B) The amount of the debt, including any interest, penalties and administrative costs; or

(C) In the case of retirement annuity payments certified by the Office of Personnel Management, up to twenty-five percent of the amount of the payment as shown on the payment record.

(ii) Notwithstanding paragraph (f)(2)(i) of this section, if a creditor agency has specified another amount, either in dollars or as a percentage of the payment, pursuant to paragraph (d)(15) of this section, the disbursing official shall offset the amount specified by the creditor agency.

(3) *Priorities for collecting multiple debts owed by the payee.* (i) A levy pursuant to the Internal Revenue Code of 1986 shall take precedence over deductions under this section.

(ii) When a payment may be offset to collect more than one debt under this section, amounts offset will be applied:

(A) First, to satisfy any past due support debts assigned to a State pursuant to sections 402(a)(26) and 471(a)(17) of the Social Security Act (*see* 26 U.S.C. 6402(c) and sections 285.1 and 285.3 of this part);

(B) Second, to satisfy any debts owed to Federal agencies;

(C) Third, to satisfy any qualifying past-due support claims not assigned to a State (*see* 26 U.S.C. 6402(c) and sections 285.1 and 285.3 of this part); and

(D) Fourth, to any debts owed to States for debts other than past-due support (*see* § 285.8 of this part).

(iii) If a recurring payment is being offset to collect a debt when another debt owed by the payee with a higher priority is submitted to FMS, and if the amount that may be legally offset from such payment is insufficient to satisfy both debts, then collections for the first, lower-priority debt will be suspended or reduced until the debt with the higher priority is satisfied or is otherwise uncollectible.

(g) *Notices*—(1) *Warning notice by disbursing official to payee/debtor.* Before offsetting a recurring payment, the disbursing official, or FMS on behalf of the disbursing official, will notify the payee in writing when offsets will begin (which may be stated as a number of days or number of payments from the time of the notice) and the anticipated amount of such offset (which may be stated as a percentage of the payment). Such notice shall also provide the information contained in paragraph(g)(3) of this section.

(2) *No additional warning notice when collections are suspended and resumed.* As described in paragraph (f)(3)(iii) of this section, FMS may suspend or reduce the application of collections from a recurring payment for one debt when another debt, which is owed by the same debtor and has a higher legal priority, is submitted to FMS for collection. The disbursing official is not required to send additional warning notices when collections for the lower priority debt resume; however, pursuant to paragraph (g)(3) of this section, each offset will be accompanied by an offset notice, which explains how the offset amounts were applied.

(3) *Offset notice.* When an offset occurs under this section, the disbursing official, or FMS on behalf of the disbursing official, shall notify the payee in writing that an offset has occurred including:

(i) A description of the payment and the amount of offset taken;

(ii) The identity of the creditor agency requesting the offset; and

(iii) A contact point within the creditor agency who will handle concerns regarding the offset.

(h) *Notification to creditor and payment agencies.* (1) FMS will notify the creditor agency of all offsets made to collect the creditor agency's debts. Such notification shall include the complete name and taxpayer identifying number of each debtor/payee, the total amounts collected from each debtor/payee's payment, and the amount of any fees charged by FMS and any other disbursing official conducting offsets. FMS will not advise the creditor agency of the source of payment from which such amounts were collected.

(2) When a non-Treasury disbursing official conducts the offset, that disbursing official will transmit to FMS all of the information necessary for FMS to send notification under paragraph (h)(1) of this section, including the amount of any fees that the creditor agency is responsible for paying.

(3) FMS will make available to the payment agency the information contained in the notification of offset, so that the payment agency may direct any questions concerning the claim to the appropriate contact person in the creditor agency.

(i) *Disposition of amounts collected.* (1) FMS will transmit amounts collected for debts, less fees charged pursuant to paragraph (j) of this section, to the appropriate creditor agency or agencies. Alternatively, FMS may bill the creditor agency for any fees charged pursuant to paragraph (j) of this section.

(2) If FMS learns from a paying agency that a payment should not have been made, and thus not offset, FMS will notify the creditor agency. FMS may deduct the offset amount from future amounts payable to the creditor agency. Alternatively, upon FMS's request, the creditor agency shall return promptly to the disbursing official an amount equal to the amount of the offset (without regard to whether any other amounts payable to such disbursing official have been paid).

(3) Generally, the disbursing official is not responsible for refunding money to debtors. The creditor agency shall notify FMS any time the creditor agency returns all or any part of an offset payment to an affected payee. FMS and the creditor agency shall adjust the debtor records appropriately.

(j) *Fees.* FMS may charge a fee sufficient to cover the full cost of implementing the centralized offset program, including the amount of any fees charged by other disbursing officials conducting an offset under this section. FMS may deduct the fees from amounts collected by offset or may bill the creditor agencies. FMS will charge fees only for actual offsets collected.

(k) *Waiver of certain provisions under the Computer Matching Privacy and Protection Act of 1988.* As authorized by 31 U.S.C. 3716(f), FMS, under a delegation of authority from the Secretary, has waived certain requirements of the Computer Matching and Privacy Protection Act of 1988, Pub. L. No. 100–503, as amended, for matches between delinquent debt records and payment records for offset purposes upon written certification by the head of the creditor agency that the requirements of 31 U.S.C. 3716(a) have been met. Specifically, for administrative offset of Federal payments other than tax refunds, FMS has waived the requirements for a computer matching agreement contained in 5 U.S.C. 552a(o) and for post-match notice and verification contained in 5 U.S.C. 552a(p) so long as the creditor agency provides certification to FMS in accordance with the provisions of paragraph (d)(6) of this section. Such waiver is not necessary for offset of Federal tax refunds, pursuant to 5 U.S.C. 552a(a)(8)(B). The Data Integrity Board of the Department of the Treasury shall review and include in reports under 5 U.S.C. 552a(u)(3)(D) a description of the matching activities conducted for centralized offset under this section. No other Data Integrity Board is required to take any action under 5 U.S.C. 552a(u) concerning these computerized comparisons.

Dated: December 19, 2002.

**Richard L. Gregg,**

*Commissioner.*

[FR Doc. 02–32572 Filed 12–24–02; 8:45 am]

BILLING CODE 4810–35–P

# EXHIBIT 8

[Code of Federal Regulations]
[Title 31, Volume 2]
[Revised as of July 1, 2002]
From the U.S. Government Printing Office via GPO Access
[CITE: 31CFR285.12]

[Page 125-128]

TITLE 31--MONEY AND FINANCE: TREASURY

CHAPTER II--FISCAL SERVICE, DEPARTMENT OF THE TREASURY

PART 285--DEBT COLLECTION AUTHORITIES UNDER THE DEBT COLLECTION IMPROVEMENT ACT OF 1

Subpart B--Authorities Other Than Offset

Sec. 285.12  Transfer of debts to Treasury for collection.

    (a) Definitions. For purposes of this section:
    Agency means a department, agency, court, court administrative
office, or instrumentality in the executive, judicial, or legislative
branch of the Federal Government, including government corporations.
    Creditor agency means any Federal agency that is owed a debt.
    Debt means any amount of money, funds or property that has been
determined by an appropriate official of the Federal government to be
owed to the United States by a person. As used in this section, the term
``debt'' does not include debts arising under the Internal Revenue Code
of 1986.
    Debt collection center means an agency or a unit or subagency within
an agency that has been designated by the Secretary of the Treasury to
collect debt owed to the United States. FMS is a debt collection center.
    FMS means the Financial Management Service, a bureau of the
Department of the Treasury.
    Person means an individual, corporation, partnership, association,
organization, State or local government, or any other type of entity
other than a Federal agency.
    Secretary means the Secretary of the Treasury.
    (b) In general. Cross-servicing means that FMS or another debt
collection center is taking appropriate debt collection action on behalf
of one or more Federal agencies or a unit or subagency thereof.
    (c) Mandatory transfer of debts to FMS. (1) Except as set forth in
paragraph (d) of this section, a creditor agency shall transfer any debt
that is more than 180 days delinquent to FMS for debt collection
services. For accounting and reporting purposes, the debt remains on the
books and records of the agency which transferred the debt.
    (2) On behalf of the creditor agency, FMS will take appropriate
action to collect or compromise the transferred debt, or to suspend or
terminate collection action thereon, in accordance with the statutory
and regulatory requirements and authorities applicable to the debt and
the action. Appropriate action to collect a debt may include referral to
another debt collection center, a private collection contractor, or the
Department of Justice for litigation. The creditor agency shall advise
FMS, in writing, of any specific statutory or regulatory requirements
pertaining to their debt and will agree, in writing, to a collection
strategy which includes parameters for entering into compromise and
repayments agreements with debtors.
    (3)(i) A debt is considered 180 days delinquent for purposes of this
section if it is 180 days past due and is legally enforceable. A debt is
past-due if it has not been paid by the date specified in the agency's

initial written demand for payment or applicable agreement or instrument (including a post-delinquency payment agreement) unless other satisfactory payment arrangements have been made. A debt is legally enforceable if there has been a final agency determination that the debt, in the amount stated, is due and there are no legal bars to collection action. Where, for example, a debt is the subject of a pending administrative review process required by statute or regulation and collection action during the review process is prohibited, the debt is not considered legally enforceable for purposes of mandatory transfer to FMS and is not to be transferred even if the debt is more than 180 days past-due.

(ii) When a final agency determination is made after an administrative appeal or review process, the creditor agency must transfer such debt to FMS, if more than 180 days delinquent, within 30 days after the date of the final decision.

(iii) Nothing in this section is intended to impact the date of delinquency of a debt for other purposes such as for purposes of accruing interest and penalties.

(4) Agencies are not required to transfer to FMS debts which are less than $25 (including interest, penalties,

[[Page 126]]

and administrative costs), or such other amount as FMS may determine. Agencies may transfer debts less than $25 to FMS if the creditor agency, in consultation with FMS, determines that transfer is important to ensure compliance with the agency's policies or programs. Agencies may combine individual debts of less than $25 owed by the same debtor for purposes of meeting the $25 threshold.

(d) Exceptions to mandatory transfer. (1) A creditor agency is not required to transfer a debt to FMS pursuant to paragraph (c)(1) of this section only during such period of time that the debt:

(i) Is in litigation or foreclosure as described in paragraph (d)(2) of this section;

(ii) Is scheduled for sale as described in paragraph (d)(3) of this section;

(iii) Is at a private collection contractor if the debt has been referred to a private collection contractor in accordance with paragraph (e) of this section;

(iv) Is at a debt collection center if the debt has been referred to a Treasury-designated debt collection center in accordance with paragraph (f) of this section;

(v) Is being collected by internal offset as described in paragraph (d)(4) of this section; or

(vi) Is covered by an exemption granted by the Secretary as described in paragraph (d)(5) of this section.

(2)(i) A debt is in litigation if:

(A) The debt has been referred to the Attorney General for litigation by the creditor agency; or

(B) The debt is the subject of proceedings pending in a court of competent jurisdiction, including bankruptcy proceedings, whether initiated by the creditor agency, the debtor, or any other party.

(ii) A debt is in foreclosure if:

(A)(1) Collateral securing the debt is the subject of judicial foreclosure proceedings in a court of competent jurisdiction; or

(2) Notice has been issued that collateral securing the debt will be foreclosed upon, liquidated, sold, or otherwise transferred pursuant to applicable law in a nonjudicial proceeding; and

(B) The creditor agency anticipates that proceeds will be available from the liquidation of the collateral for application to the debt.

(3) A debt is scheduled for sale if:

(i) The debt will be disposed of under an asset sales program within one (1) year after becoming eligible for sale; or

(ii) The debt will be disposed of under an asset sales program and a schedule established by the creditor agency and approved by the Director of the Office of Management and Budget.

(4) A debt is being collected by internal offset if a creditor agency expects the debt to be collected in full within three (3) years from the date of delinquency through internal offset. A debt is being collected by internal offset if the creditor agency is withholding funds payable to the debtor by the creditor agency, or if the creditor agency has issued notice to the debtor of the creditor agency's intent to offset such funds.

(5)(i) Upon the written request of the head of an agency, or as the Secretary may determine on his/her own initiative, the Secretary may exempt any class of debts from the application of the requirement described in paragraph (c)(1) of this section. In determining whether to exempt a class of debts, the Secretary will determine whether exemption is in the best interests of the Government after considering the following factors:

(A) Whether an exemption is the best means to protect the government's financial interest, taking into consideration the number, dollar amount, age and collection rates of the debts for which exemption is requested;

(B) Whether the nature of the program under which the delinquencies have arisen is such that the transfer of such debts would interfere with program goals; and

(C) Whether an exemption would be consistent with the purposes of the Debt Collection Improvement Act of 1996 (DCIA), Pub. L. 104-134, 110 Stat. 1321-358 (April 26, 1996).

(ii) Requests for exemptions must clearly identify the class of debts for which an exemption is sought and must explain how application of the factors listed above to that class of debts warrants an exemption.

[[Page 127]]

(iii) Requests for exemption must be made by the head of the agency requesting the exemption, the Chief Financial Officer of the agency, or the Deputy Chief Financial Officer of the agency. For purposes of this section, the head of an agency does not include the head of a subordinate organization within a department or agency.

(6) In accordance with paragraph (d)(5)(i) of this section, debts being serviced and/or collected in accordance with applicable statutes and/or regulations by third parties, such as private lenders or guaranty agencies are exempt from the requirements in paragraph (c)(1) of this section.

(e) Schedule of private collection contractors. FMS will maintain a schedule of private collection contractors eligible for referral of debts from FMS, other debt collection centers, and creditor agencies for collection action. An agency with debt which has not been transferred to FMS or referred to another debt collection center, for example, debt that is less than 180 days delinquent, may refer such debt to a private collection contractor listed on FMS' schedule of private collection contractors provided they do so in accordance with procedures established by FMS. Alternatively, an agency may refer debt that is less than 180 days delinquent to a private collection contractor pursuant to a contract between the creditor agency and the private collection contractor, as authorized by law.

(f) Debt collection centers. A creditor agency may transfer debt

# EXHIBIT 9